COHEN, Harris and Cohen, Olga, h/w, Appellants,

v.

CITY OF PHILADELPHIA and Green, William J., Mayor, City of Philadelphia and Solomon, Morton B., Police Commissioner, City of Philadelphia and Civil Service Commission, City of Philadelphia and D'Amato, Anthony, Personnel Director, City of Philadelphia and Goode, W. Wilson, Managing Director, City of Philadelphia, Appellees.

No. 83-1575.

United States Court of Appeals, Third Circuit.

Argued March 6, 1984.

Decided June 6, 1984.

82

Michael Anthony De Fino (argued), De Fino, De Fino & De Fino, P.C., Philadelphia, Pa., for appellants.

Pamela Foa (argued), Russell S. Endo, Asst. City Sol., John M. Myers, Divisional Deputy City Sol., City of Philadelphia Law Dept., Philadelphia, Pa., for appellees.

Before HUNTER, BECKER, Circuit Judges, and HOFFMAN,* District Judge.

\* Honorable Walter E. Hoffman, United States District Judge for the Eastern District of Virginia, sitting by designation.

1. Harris Cohen brought this suit together with his wife, Olga Cohen. Mrs. Cohen's claims are entirely derivative of her husband's. For clarity we refer throughout this opinion only to Harris Cohen.

2. 42 U.S.C. § 1983 (Supp. V 1981) provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

Harris Cohen, appellant,[1] was employed as a police officer with the City of Philadelphia for approximately seven and one half years before his dismissal on May 26, 1980 for suspected participation in a burglary. After being acquitted in a criminal trial, Cohen was reinstated without back pay. He now sues the City of Philadelphia and certain of its officers claiming that they deprived him of property without due process of law in violation of 42 U.S.C. §§ 1983[2] and 1985[3] (Supp. V 1981). The district court granted summary judgment in the defendants' favor and Cohen appeals. We will affirm.

### I.

On May 5, 1980, while appellant was on duty, one or more police officers burglarized the Cobbs Creek Appliance Store in Philadelphia. Cohen was one of four police officers arrested and charged in connection with the burglary. Two of these officers, Klein and Ricciardi, pled guilty and furnished information to the Police Department and the District Attorney's Office in furtherance of their investigation. It was learned during the course of this investigation that Klein paid Cohen $100 following the burglary. Based upon this fact and the surrounding circumstances, the department dismissed Cohen.

Police Commissioner Solomon informed appellant in writing on May 27, 1980 that he had been discharged effective May 26, 1980 for his participation in the burglary.

other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

3. Cohen's § 1985 claim, which is not pressed on appeal, is clearly without merit because Cohen fails to allege a "class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). We therefore do not address it further.

The Philadelphia Civil Service Regulations provide that an employee who has been discharged may appeal to the Civil Service Commission within thirty days to obtain a review of the decision. Appellant made no attempt to appeal his discharge within thirty days.

In March, 1981, Cohen was acquitted of all criminal charges. He then petitioned for and received an order from the Court of Common Pleas allowing him to file his Civil Service Commission appeal nunc pro tunc. He appealed his dismissal to the Civil Service Commission on September 3, 1981—a full one and one half years after his dismissal.

The Civil Service Commission heard Cohen's appeal on December 16, 1981. At that hearing, the transcript from Cohen's criminal case was submitted. Cohen testified and admitted receiving $100 from Ricciardi, but stated that the $100 was in repayment of a loan made to Klein, his former superior, shortly before the burglary. On January 8, 1982, the Civil Service Commission issued its opinion. The Commission concluded that there was insufficient evidence to implicate Cohen in criminal activity. It determined, however, that appellant had violated a Police Department directive in making a loan to a superior. The Commission therefore ordered his reinstatement, but held that the reinstatement should be without back pay.

At that point, Cohen had the opportunity to petition for rehearing before the Civil Service Commission, and to appeal the Commission's decision to the Philadelphia Court of Common Pleas and onward through the state appellate system. He chose not to do so. Rather, Cohen brought this action in federal court pursuant to section 1983, asserting that he had been deprived of property without due process of law.

■ Cohen asserted in the district court and on appeal that his right to due process was violated by the failure to afford him a pre-termination hearing, and by the later failure to award him back pay upon reinstatement.[4] The district court concluded that Cohen had sufficient remedies in state law, and that under the rule announced in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), therefore, he had not been deprived of property without due process. We will affirm.

## II.

■ In any section 1983 action two essential elements must be established: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt*, 451 U.S. at 535, 101 S.Ct. at 1912. The first prong of the test is clearly met in this case: Philadelphia and the individual defendants undisputedly acted under color of state law. For the purposes of this appeal, therefore, we must focus on whether Cohen was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.

■ Cohen alleges that he was deprived of a constitutional right when he suffered a deprivation of property without due process of law in violation of the Fourteenth Amendment.[5] Defendants concede that

---

**4.** He also argues on appeal that summary judgment should not have been granted because of the existence of genuine issues of material fact. We do not agree. At best, Cohen's allegations in opposition to defendants' motion for summary judgment were repetitions of the conclusory allegations in his complaint, and therefore not sufficient to defeat a motion for summary judgment. See, e.g., *United States v. Allen*, 578 F.2d 236, 237 (9th Cir.1978); *Brown v. Ford Motor Co.*, 494 F.2d 418, 420 (10th Cir.1974).

**5.** Cohen also contends that the dismissal implicated his liberty interests. He does not, however, allege that the accusations were publicly disclosed. Public disclosure must be established before accusations can even be considered as violating a liberty interest. See *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). We do not decide whether a liberty interest was ever present in this case. Cohen had the right to demand a hearing, which would give him the opportunity to clear his name, within thirty days of his

Cohen possessed a property interest in his job. The only question remaining for our resolution, therefore, is whether Cohen was deprived of this property interest without due process of law.

Cohen argues from two different angles that his right to due process was offended by the failure to award him back-pay. First he argues that due process requires that he be given a pre-termination hearing unless his right to back pay is absolutely guaranteed upon his being vindicated of the charged misconduct.[6] Second, he argues that the Commission violated due process in practice by refusing to award him back-pay after concluding that he was guilty only of derelictions that had not been included in the charge against him.

We, like Cohen, are skeptical that Philadelphia could constitutionally establish procedures allowing it to dismiss employees without a hearing and to deny backpay even if the charges supporting discharge later prove unfounded. In balancing "the importance of the private interest and the length or finality of the deprivation; the likelihood of governmental error; and the magnitude of the governmental interests involved," *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982) (citations omitted), we might well find that such a system denied the employee due process of law. Similarly, we are sympathetic to Cohen's argument that he could not constitutionally be denied back pay on the basis of charges conceived by the Commission after his hearing—charges of which he had never been informed and against which he had never been given an opportunity to defend.

The right to a hearing is certainly of little value without prior notice of the charges presented, in sufficient detail fairly to enable the party charged to demonstrate any error that might exist. *See Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).[7]

█ With all of this conceded to Cohen, however, he has not established that the state failed to provide him due process of law. In this case, as in *Parratt*, the initial deprivations cannot be viewed in isolation. Rather, we must also consider whether the deprivation resulted from a "random and unauthorized act by a state employee" or, instead, occurred as the result of "some established state procedure." *Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916. If we conclude that Cohen's deprivation resulted from the "Commission's error" rather than from "the state system itself," *Logan*, 455 U.S. at 436, 102 S.Ct. at 1158, we must then consider whether the means of redress provided by the state satisfy the requirements of the Due Process Clause. In such a case, Cohen will have established a section 1983 claim only if the remedies provided by the state do not comport with the requirements of due process.

█ We conclude that Cohen was entitled to back pay after the charges against him proved unfounded, and that the failure to award him back-pay was the result of Commission error. Although the Philadelphia Home Rule Charter is ambiguous at best regarding the Commission's discretion

---

discharge. He has since exercised that right and cleared his name.

**6.** We do not understand Cohen to argue that he is entitled to a pre-termination hearing even if he is guaranteed back pay upon reinstatement. Nor would we be persuaded by such an argument. The procedures established by the Philadelphia Home Rule Charter and the Civil Service Regulations promulgated thereunder are virtually identical to those approved by the Supreme Court in *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

**7.** The facts of this case illustrate the usefulness of prior detailed notification of pending charges. The Commission denied Cohen back pay after concluding that he had violated Section 5.1 of the Disciplinary Code of the Police Force: "Soliciting money or any valuable thing without proper authorization." Cohen thus had a very strong argument that he did not violate this directive by *loaning* money. He could also have argued that deprivation of back pay was far too harsh a punishment for violating Section 5.1, which authorizes only a five to ten day suspension for its violation.

over back pay,[8] it has been interpreted to require the Commission to award back pay to a *wrongfully* discharged employee—one who is not proven to have committed the acts for which he was discharged. *See Gallagher v. Civil Service Commission,* 16 Pa.Cmwlth. 279, 330 A.2d 287 (1974) (Commission reinstated officer acquitted of charges against him, but denied back pay because evidence raised "inference" of conduct unbecoming an officer; portion of Commission's order denying back pay reversed).

Nor may the Commission deprive Cohen of an otherwise required award of back pay because it has found him guilty of derelictions with which he had not previously been charged. The Philadelphia Home Rule Charter requires that discharged employees be given specific notice of the charges they will face if they choose to appeal to the Civil Service Commission.[9] The Philadelphia Civil Service Regulations, promulgated pursuant to the Charter, also require that a dismissed employee be given notice both of the charges against him and the facts supporting those charges.[10] Pennsylvania case law further confirms that the Civil Service Commission may not,

for any purpose, consider whether an individual has committed acts with which he has not previously been charged. *See City of York v. Dinges,* 21 Pa.Cmwlth. 322, 328, 345 A.2d 776, 780 (1975) (argument that plaintiff should have been dismissed in any event because of future ineffectiveness could not properly be considered because he was never charged with future ineffectiveness). The Commission therefore violated Pennsylvania law [11] both in failing to award Cohen back pay and in considering whether he had committed acts with which he had not previously been charged.

Like the complainant in *Parratt,* however, Cohen has established no more than an unauthorized failure of state agents to follow prescribed procedures:

> Although he has been deprived of property under color of state law, the deprivation did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure.

*Parratt,* 451 U.S. at 543, 101 S.Ct. at 1916. Under the rule announced in *Parratt,* these

---

**8.** Section 7.7–201 of the Philadelphia Home Rule Charter provides:

> If the Commission sustains the appeal on the ground that the action complained of was taken by the appointing authority for any political, religious or racial reason, or labor union activity lawful for municipal employees, it shall order the employee to be reinstated to his former position without loss of pay for the period of his suspension. In all other cases where the Commission sustains the appeal of the employee it shall order the reinstatement of the employee in his former position *with or without loss of pay for the period of his suspension* or direct that he be appointed to a position of equal status in the same office, department, board or commission with or without loss of pay for the period of his suspension. If the Commission overrules the appeal of the employee, it shall confirm the action of the appointing authority which shall be final as of the date it was taken.

351 Pa.Admin.Code § 7.7–201 (Shepard's 1983) (emphasis added).

**9.** The Philadelphia Home Rule Charter requires the city Personnel Director to prepare regulations providing for:

> (q) Discharge or reduction in rank or grade after appointment or promotion is completed only after the person to be discharged or reduced has been presented with the reasons for such discharge or reduction, specifically stated ....

351 Pa.Admin.Code § 7.7–401 (Shepard's 1983). The accompanying notes explain that subsection q is intended to ensure that a dismissed employee will be aware of all charges against him so he may decide whether to appeal his dismissal:

> Employees discharged or demoted have a right of appeal to the Civil Service Commission. See Annotation to Section 7–201. This subsection is necessary so that they may know the reasons for the action taken and on that basis decide upon the question of appealing.

**10.** "The notice to the employee must state the specific reasons for the dismissal or demotion and summarize the facts in support thereof with sufficient particularity to allow the employee to prepare a defense to the charges." Philadelphia Civil Service Regulations, § 17.01.

**11.** The Philadelphia Civil Service Regulations are deemed to have "the force and effect of law ...." 53 Pa.Stat.Ann. § 12633 (Purdon 1957).

errors did not deprive appellant of due process so long as the State provided him with a means by which to receive redress for the deprivation. "[T]he State ... has provided respondent with the means by which he can receive redress for the deprivation.... The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process." *Id.* at 543–44, 101 S.Ct. at 1916–1917.

In this case, Pennsylvania has provided for judicial review of the Commission's actions. The courts of Pennsylvania are empowered to correct any of the Commission's actions which are manifest abuses of discretion, are contrary to law, or rest on findings of fact which are not supported by substantial evidence. *See* 2 Pa.Cons.Stat. Ann. § 754 (Purdon Supp.1982); *McLafferty v. Civil Service Commission*, 68 Pa. Cmwlth. 632, 634, 450 A.2d 253, 254 (1982); *Fitzgerald v. Civil Service Commission*, 16 Pa.Cmwlth. 540, 330 A.2d 285, 286 (1974). And, we note, Pennsylvania courts seem every bit as determined as the federal courts to prevent the type of wrongs that occurred in this case. *See, e.g., Dinges*, 21 Pa.Cmwlth. at 328, 345 A.2d at 780; *Gallagher*, 16 Pa.Cmwlth. at 279, 330 A.2d at 287.

▆▆▆▆ We thus join the First and Seventh Circuits in holding that substantive mistakes by administrative bodies in applying local ordinances do not create a federal claim so long as correction is available by the state's judiciary.[12] Any other holding would lead to the danger that:

any plaintiff in state court who was asserting a right within the broadly defined categories of liberty or property and who lost his case because the judge made an error could attack the judgment indirectly by suing the judge under section 1983. That would be an intolerable interference with the orderly operations of the state courts. Due process is denied in such a case only if the state fails to provide adequate machinery for the correction of the inevitable errors that occur in legal proceedings ...."

*Ellis v. Hamilton*, 669 F.2d 510, 514 (7th Cir.), *cert. denied, sub nom. Ellis v. Judge of the Putnam Circuit Court*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). In this case, because Pennsylvania has provided a means of correcting the errors that will sometimes occur at the administrative level, no deprivation without due process of law has occurred.

Cohen argues that to require him to proceed in state court is to require a section 1983 plaintiff to exhaust his state remedies before proceeding in federal court, contrary to *Patsy v. Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Exhaustion is not however the issue. The necessary predicate to the claim for relief is that there has been a denial of due process under state procedures. Our holding is that the state has provided Cohen with due process by providing "reasonable remedies to rectify a legal error by a local administrative body," *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 832 n. 9 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982),

**12.** *See, e.g., Albery v. Reddig*, 718 F.2d 245, 249 n. 7 (7th Cir.1983) ("The complaint here does not allege that existing state procedures are inadequate to remedy the alleged negligence of the local officials. Instead, it asks the federal courts to correct substantive mistakes that may have been made in applying local ordinances in the early stages of the zoning process. The allegedly negligent errors in applying local law do not violate the plaintiffs' due process rights as long as adequate state procedures are available to remedy those errors."); *Roy v. City of Augusta*, 712 F.2d 1517, 1524 (1st Cir.1983) ("This theory is to be distinguished from claims that local officials erred in not issuing licenses.

Even when errors are extreme, they do not implicate the basic adequacy of the state's *process,* especially when correction is available by the state's judiciary.") (emphasis in original); *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 832 n. 9 (1st Cir.) ("[W]here—as here—the state has erected a complex statutory scheme and provided for avenues of appeal to the state courts, property is not denied without due process simply because a local planning board rejects a proposed development for erroneous reasons or makes demands which arguably exceed its authority under the relevant state statutes."), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982).

and that therefore he has not alleged a constitutional violation entitling him to sue under section 1983. Although Cohen has waived his state law avenues of relief by his inaction, the very existence and apparent efficacy of such remedies defeats his claim that he was deprived of property without due process of law.

We do not hold that the fact that a state-law cause of action exists under which a plaintiff may recover for an alleged constitutional violation is always sufficient to prevent the defendants from having to answer in federal court under section 1983. In this case, the contention is that a state agency erred in its adjudication of plaintiff's claim against the state. There is no claim that the plaintiff did not have recourse to the state courts, that the agency was acting according to a state policy in denying plaintiff's claim, or that the state proceeding was constitutionally defective or insufficient. At least under these circumstances, we believe that *Parratt* bars this suit.

### III.

Accordingly, we conclude that Cohen was not deprived of property without due process of law. The judgment of the district court will be affirmed.