Richard VIOLA

v.

**BENSALEM TOWNSHIP, et al.**

Civ. A. No. 84–3184.

United States District Court,
E.D. Pennsylvania.

Nov. 8, 1984.

---

Richard A. Sprague, Philadelphia, Pa., for plaintiff.

Ward F. Clark, Doylestown, Pa., for defendants.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before this court is defendants'[1] motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) and in the alternative a motion for a more definite statement pursuant to Fed.R.Civ.P. 9. The defendant Natalie Strange, Township Man-

1. Bensalem Township, Township Manager Natalie Strange, Township Tax Collector Theresa Eckert, Individual Township Supervisors: Stephen Kelly, Patricia Zajac, Nicholas Pasqualone, and Mary Komada, Deputy Chief of Police Theodore Zajac, Lieutenant of Police Robert Eckert, Solicitor of the Township Emil Toften, and Special Counsel to the Board of Supervisors, Raymond McHugh, Barry Denker, and William Cameron.

ager, individually has motioned this court to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). Last, defendant Emil Toften, Solicitor for the Board of Supervisors of Bensalem Township, individually has motioned this court to dismiss plaintiff's complaint pursuant to Fed.R. Civ.P. 12(b)(6) and in the alternative a motion for a more definite statement pursuant to Fed.R.Civ.P. 9.

Plaintiff Richard Viola originally brought an action for a writ of mandamus in state court, but subsequently voluntarily dismissed the action and brought this action in federal court. Because defendants have motioned this court to dismiss for failure to state a claim, the plaintiff's complaint will be viewed most favorably to him, the non-moving party.

Based upon the pleadings,[2] the alleged facts are that plaintiff was appointed police chief by the Bensalem Township Board of Supervisors[3] ("Board") in mid-1981. At that time one Township Supervisor, Mr. Kelly, a defendant here, dissented on the vote to appoint the plaintiff. Specifically, at the time of casting his vote, Mr. Kelly stated he believed the appointment was politically motivated, and when he got the necessary support on the Board, he would move for the dismissal of the plaintiff as police chief. Sometime after the plaintiff was appointed police chief, the plaintiff brought charges, seeking dismissal for cause, against: defendant Theodore Zajac (then deputy chief), Mr. Kosarek (then detective), and Mr. Rouland (then detective). Mr. Rouland resigned. Conversely, upon the vote of the Board (at that point in time) Detective Theodore Zajac and Mr. Kosarek were dismissed. Each of the two subsequently brought civil suits against the Township concerning the propriety of their dismissals. Further, plaintiff assisted state and federal authorities in an investi-

gation of defendant Kelly for possible federal narcotic violations. Indeed, plaintiff assisted in the arrest of defendant Kelly on federal narcotic charges. Defendant Kelly's counsel in that matter was Mr. Denker, a defendant here.

After the election of November, 1983, defendant Kelly got the necessary support from the Board to suspend plaintiff without pay. On January 3, 1984, the Board voted in favor of suspending the plaintiff as police chief. The Board did not give the plaintiff notice of the charges which they relied upon to dismiss nor at that time was an opportunity granted for a hearing, for plaintiff to answer the general allegations of misconduct prior to his dismissal.[4] There were no formal charges levied against the plaintiff by the Board at any time prior to his dismissal.

Plaintiff contends that the defendants, in an orchestrated effort, sought the removal of plaintiff prior to the election of the present Board. Specifically, the plaintiff alleges that defendant Kelly was the "king pin" who "bought the" favors of some of the other defendants who were at the time candidates for the position of Township Supervisor, by promising to support their candidacy during the election and by promising employment opportunities to certain members of the candidates' families. It must be noted here that defendant Kelly alone could not grant employment opportunities, but rather the Board by majority vote did in essence control the purse, and therefore, the job opportunities of the Township.

When the newly elected Board came into power, after it discharged plaintiff as chief of police, it reinstated defendant Zajac as deputy police chief, and reinstated Mr. Kosarek as detective. In addition, the Board appointed a panel consisting of defendant Cameron and Denker to recommend settle-

---

**2.** As the defendants have not answered plaintiff's complaint, the plaintiff's allegations for the purpose of this matter now before the court will be viewed as the facts.

**3.** The Board of Township Supervisors consists of five members of the community, duly elected

by the public, which act as the governing body of the Township.

**4.** Defendants have not raised a defense that exigent circumstances were present; therefore, this Court will conclude at this time no exigent circumstances were present.

ment of certain civil suits pending against the Township. These suits primarily arose out of the discharge of defendant Zajac and Mr. Kozsarek.

At the same Board meeting that plaintiff was dismissed, the Board appointed a panel consisting of the defendant McHugh and defendant Eckert, Township Police Lieutenant to conduct an investigation of plaintiff's behavior during the period of his entire employment with the township. The investigation panel researched the matter for approximately four months. Plaintiff asserts that this panel worked in concert with the Board to stack the charges against the plaintiff.

The investigation panel made its report to the Board on May 7, 1984, approximately four months after plaintiff was dismissed. The Board, after discussing the charges in a closed meeting,[5] voted to affirm its prior decision of dismissal. Again the Board did not give prior notice of this action, nor was an opportunity given to plaintiff to be heard on this matter.[6]

Plaintiff claims that he has suffered public scorn, humiliation, injury to reputation, and severe emotional distress as a result of defendants' behavior.

Count I of plaintiff's complaint alleges that the defendants (except Township Manager Strange) violated the Racketeer Influenced and Corrupt Organization Act (RICO) 18 U.S.C. § 1961 *et seq.* by their activities which caused the plaintiff to be injured. Particularly, plaintiff claims that the defendant organized a purposeful effort, which included trading votes on the Board for support and consideration during the election and/or employment opportunities for family and friends. This behavior plaintiff claims amounts to a violation of 18 Pa.Cons.Stat.Ann. § 4701 (Purdon, 1983),

Bribery in Official and Political Matters. Moreover, plaintiff alleges that the defendants on the Board settled various lawsuits, which were brought by some of the other defendants against the Township, favorably to these defendants who brought the suits. Defendants Kelly, McHugh, T. Zajac and R. Eckert, it is alleged, conspired among and between themselves during their investigation of plaintiff. Plaintiff also alleges that the defendants traveled in interstate commerce to promote their alleged illegal activity. Finally, plaintiff alleges that all of the defendants (except Township Manager Strange) either acted primarily or aided and abetted, in violating 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud).

Plaintiff asserts his injuries, *inter alia,* of being suspended from his job, injury to his reputation, and his emotional distress were the result of the unlawful activity of the defendants in violating 18 U.S.C. § 1961, *et seq.* (RICO). Plaintiff's theory of recovery is grounded in his assertion that the defendant violated the civil provision of RICO 18 U.S.C. § 1964 which states in part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit including a reasonable attorney's fee.

Therefore, our analysis must lead to the review of 18 U.S.C. § 1962 which states in part:

> (a) It shall be unlawful for any person who has received any income derived directly or indirectly from a pattern of

---

**5.** The reason the meeting was closed was because the subject matter of the meeting pertained to personnel and staff. The excluding of the public during discussion of personnel and staff is permissible under Pennsylvania law. See 65 Pa.Cons.Stat.Ann. § 263 (Purdon, 1984).

**6.** In the defendants' recital of the facts in their brief supporting the instant motion, defendants contend that on May 21, 1984, the Board with-

drew their dismissal without pay, and supplanted it with a suspension *with* pay, pending a hearing on this matter. A motion to dismiss for failure to state a claim requires the Court to view plaintiff's complaint as true. The plaintiff has not mentioned this Board meeting action on May 21st. Accordingly, I will not consider the May 21st action here.

racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate, or foreign commerce ...

(b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section

Enterprise is defined in 18 U.S.C. § 1961(4):

'Enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.

Pattern of racketeering activity is defined in 18 U.S.C. § 1961(5):

'Pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.

Racketeering activity is defined in 18 U.S.C. § 1961(1) which states in part:

'Racketeering activity' means (A) ... bribery ... (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... Section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) ...

section 1952 (relating to racketeering).....

It is plaintiff's contention that the defendants did engage in a pattern of racketeering activity and did conspire to engage in a pattern of racketeering activity to acquire and maintain control and interest in the Board, thus violating 18 U.S.C. § 1962 b, d *supra*. Additionally, it is plaintiff's contention that the defendants are either employed by or control the Township Board (which constitutes an enterprise) and are involved in a pattern of racketeering activity; therefore, the defendants are in violation of 18 U.S.C. § 1962 c. *See United States v. Davis*, 707 F.2d 880 (6th Cir.1983) (County Sheriff's Office constituted an "enterprise" under RICO).

As is often the case the parties do not agree as to the applicability of the civil RICO statute. Defendants argue that their behavior does not fall within the purview of the civil RICO Act. Specifically, the defendants assert that a person must be convicted under the predicated offenses listed under 18 U.S.C. § 1961(1) *supra* before one can bring a civil suit. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 741 F.2d 482 (2nd Cir.1984). Further, the defendants argue that one must show a "RICO" injury before one can recover under RICO. *Sedima, supra; Bankers Trust Company v. Rhoades*, 741 F.2d 511 (2d Cir.1984). In essence, defendant asserts, because the defendants have not been convicted for the predicated acts nor has plaintiff alleged a RICO injury, the plaintiff lacks standing to bring the RICO civil claim. Conversely, plaintiff asserts that neither conviction for the predicated acts nor a showing of injury beyond that caused by the predicated acts need be shown to recover under RICO. *United States v. Cappetto*, 502 F.2d 1351 (7th Cir.1974) *cert. denied*, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975); *Kimmel v. Peterson*, 565 F.Supp. 476 (E.D.Pa.1983).

The Act itself is not explicit on these points. Moreover, the Third Circuit has not yet ruled as to whether conviction of the predicated acts or a showing of RICO injury is required for standing to bring a

civil RICO action.[7] To dispose of the RICO count I need only address whether or not conviction of the underlying predicated acts is required.[8]

In *Sedima, supra,* the Second Circuit held that conviction of the predicate criminal acts was a prerequisite before bringing a civil RICO action. Thus, for a party to have standing to bring a civil RICO action, the party must show that the defendants have been convicted of the underlying acts. The court in *Sedima* cited the fact that RICO liability does not exist without criminal conduct. That the act itself was to remedy wrongs done by criminal activity. *Id.* at 500. Additionally, the court went on to discuss problems which would arise because of different standards of proof, if the predicated acts would be allowed to be 'prosecuted' by the plaintiff in a civil action. *Id.* at 501–502. Further, without prior criminal convictions of predicated acts as a requirement for standing in a civil RICO action, a defendant in a civil suit may be in a serious dilemma. If the defendant in a civil RICO action elected not to answer question by exercising his 5th amendment rights, a fact finder may wrongly infer culpability; conversely, if a defendant does not interpose the 5th amendment, he may be exposed to criminal prosecution. In the final analysis, the Second Circuit in *Sedima* rested its opinion on the intention of Congress and the purpose of the civil RICO action all of which reveal the more logical interpretation of requiring criminal conviction at least for the predicated acts.

Conversely, plaintiff relies upon *Cappetto, supra,* which dealt with the right of the United States government to seek an injunction under the civil RICO statute. Another line of cases plaintiff cites is the *USACO Coal Co. v. Carbomin Energy, Inc.,* 689 F.2d 94 (6th Cir.1982) where the Sixth Circuit merely stated that a conviction under 18 U.S.C. § 1962 (Criminal RICO) was not a prerequisite for standing in a civil RICO action. This is distinguishable from here where all that is argued by defendant is that conviction of the predicated act is required rather than conviction under RICO. In *Kimmel v. Peterson,* 565 F.Supp. 476 (E.D.Pa.1983) the Court merely relied upon *USACO, supra,* and several district court cases for authority that conviction for the predicated acts is not required.

■ Notwithstanding the authority presented by the plaintiff, I believe the better view was most recently enunciated by the Second Circuit in *Sedima, supra,* requiring conviction of the predicated acts. Accordingly, I will dismiss plaintiff's RICO count because he lacks standing to bring such action.

Count II of plaintiff's complaint alleges that the defendants violated his substantive due process rights as guaranteed by the 14th amendment by damaging plaintiff's reputation. Moreover, the plaintiff claims this resulted in his liberty being curtailed since now, because of the damaged reputation, plaintiff avers that he lacks mobility in the work force and his job opportunities have been narrowed. Additionally, plaintiff contends that since his employment contract was terminated without notice nor was he given an opportunity to be heard at

---

**7.** Plaintiff would have this court believe that the Court of Appeals for the Third Circuit in *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786 (3d Cir., 1984) by not specifically addressing the issue of whether or not conviction of predicated crimes is a requirement for standing to bring a civil RICO action, inferred a holding that no conviction is necessary. However, this is not so, the issue before that court was whether or not the plaintiff pleaded the underlying act of fraud with sufficient particularity; and whether the plaintiff properly alleged the existence of an enterprise as defined by RICO. Consequently, the

court never reached the question which is raised by the defendant here.

**8.** This is distinguishable from *Farmers Bank of State of Del. v. Bell Mtg. Corp.,* 452 F.Supp. 1278 (D.Del.1978) which plaintiff offers as authority that conviction of the predicated acts are not required. The court in *Farmer* merely stated that one need not be convicted under the criminal provisions of RICO before a civil action under RICO could be maintained. Actually, the defendant Pennington in *Farmer* had been convicted of a federal charge and was serving time in federal penitentiary. *Id.* at 1279, n. 1.

the time of the discharge, his procedural due process right under the 14th amendment has been violated. Based upon the foregoing, the plaintiff couches Count II on Title 42 U.S.C. § 1983.[9]

■ Section 1983 comes into operation where one asserts a violation of a federal statute or constitutional right by a person who acts under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Here it is clear that the defendant Board acted under color of state law when it discharged plaintiff. Next, we must address what federal right was violated by the discharge.

■ Plaintiff first asserts that his substantive due process rights were violated because the discharge caused his reputation to be damaged. The plaintiff has not directed this court to any authority to support his argument. Certainly standing alone the right to reputation is not a fundamental right,[10] especially where it is merely incidental to a discharge from employment. Moreover, every person who is discharged for cause has some questions raised in his community as to his competence, thus having some damage to his reputation. However, this is not to say that one can be denied procedural due process when a property interest, such as the employment contract here, is coupled with an injury to reputation. *Cf. Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976);

*Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents of State Colleges, et al. v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

■ Here plaintiff has an adequate procedure at the state level to remedy the asserted wrong. The plaintiff has the right to a hearing before the Board to answer the allegations made in the letter sent to plaintiff informing him of his discharge. The applicable Pennsylvania statute 53 P.S. § 814 states in part:

§ 814. Hearings on dismissals

If the person sought to be suspended or removed shall demand a public hearing, the demand shall be made to the appointing authority. Such person may make written answers to any charges filed against him. The appointing authority shall grant him a public hearing, which shall be held within a period of ten days from the filing of charges in writing, and written answers thereto filed within five days, and may be continued by the appointing authority for cause or at the request of the accused. At any such hearing, the person against whom the charges are made may be present in person and by counsel....

A written record of all testimony taken at such hearings shall be filed with and preserved by the appointing authority, which record shall be sealed and not be

---

9. Section 1983 states in part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

10. Where a fundamental right is not in issue, the judiciary will give deference to the governmental body that the law has a rational basis. This analysis is all that is required under the constitution. *Cf. Lincoln Union v. Northwestern Co.*, 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212

(1949); *United States v. Carolene Products Co.*, 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938). Further, it should be noted that plaintiff has mischaracterized his claim as a substantive due process violation. There has not been any legislative acts which plaintiff contends are depriving him of his rights. Rather, plaintiff's claims are grounded in contract and tort, namely defamation. *Compare Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law). However, I am not saying here that where a plaintiff can recover under state law, he may not necessarily recover for a constitutional violation. *Cohen v. City of Philadelphia*, 736 F.2d 81, 87 (3d Cir.1984).

available for public inspection in the event the charges are dismissed.

Further, 53 P.S. § 815 provides for review by appeal to the Court of Common Pleas. The discretion of the Court of Common Pleas determines whether or not the review will be *de novo. Kelly v. Warminster Township Board of Supervisors*, 44 Pa.Cmwlth. 457, 404 A.2d 731 (1979). Each time an individual is discharged from public employment within a state does not create a situation where a federal forum must be provided. Certainly where a state forum is provided which meets procedural due process, as is the case here, the plaintiff cannot merely decide not to use the state mechanism, but rather seek a federal forum. *Cohen v. City of Philadelphia*, 736 F.2d 81 (3d Cir.1984); *Kelly v. Warminster Township Board of Supervisors, et al.*, 512 F.Supp. 658 (E.D.Pa.1981), *affirmed* 681 F.2d 806 (3d Cir.1982), *cert. denied*, 459 U.S. 834, 103 S.Ct. 76, 74 L.Ed.2d 74.

■ In conclusion, the fact that plaintiff was denied a property right (his contract) triggered procedural due process. Due process requires that notice of the charges and an opportunity to be heard. *Board of Regents of State Colleges, et al. v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Pennsylvania law provides for a hearing, 53 P.S. 811 *et seq.* The Board has notified the plaintiff of the charges against him. There has been no questions raised that the procedure provided by state law would deny plaintiff of due process.[11] Accordingly, the plaintiff has not been denied due process. *Cohen, supra.*

Counts III and IV of plaintiff's complaint are clearly grounded in contract and tort law, therefore, neither have an independent basis for jurisdiction in federal court.

Because of the foregoing reasons, plaintiff has failed to state a claim, thus defendant's motion to dismiss must be granted.

**11.** The Pennsylvania Commonwealth Court in *Kelly v. Warminster Township Board of Supervisors,* 44 Pa.Cmwlth. 457, 404 A.2d 731 (1979)

stated that the Police Tenure Act 53 P.S. § 811 *et seq.* provided adequate procedural due process.