H. Merle **BINKLEY**

v.

Jeffrey A. **SHEAFFER** and **Merrill Lynch, Pierce, Fenner & Smith, Inc.**

Civ. A. No. 84–3350.

United States District Court, E.D. Pennsylvania.

April 10, 1985.

Robert F. Frankhouser, Lancaster, Pa., for plaintiff.

Howard B. Krug, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

This case comes before the Court in a somewhat unique procedural posture. After the complaint was filed, defendants moved to dismiss or for a more definite statement of the claim. Before the Court acted upon that motion, plaintiff moved to amend the complaint. Before the Court now are defendants' motion to dismiss the complaint, plaintiff's motion to amend the complaint, and defendants' opposition thereto, which very much resembles an anticipatory motion to dismiss the amended complaint, although stated in terms of the futility of granting plaintiff leave to amend. In order to facilitate the ultimate disposition of the case, we will consider all issues raised by the motion to dismiss and defendants' opposition to the motion to amend.

Plaintiff Binkley accuses Shaeffer, a stockbroker employed by Merrill Lynch, Pierce, Fenner & Smith, Inc., of "churning" his securities account in violation of § 17(a) of the Securities Act of 1933, (15 U.S.C.

§ 77(q), § 10(b)) of the Securities Exchange Act of 1934, (15 U.S.C. § 78j(b), and Rule 10(b)(5)) promulgated thereunder, §§ 2 and 18 of Article III, National Association of Securities Dealers' Rules of Fair Practice and the RICO statute (18 U.S.C. § 1962(c) and § 1964(c)). In addition, plaintiff alleges pendent state claims for fraud, breach of contract and punitive damages. All claims except the RICO count are included in the original complaint. The RICO allegations, including a claim for treble damages and counsel fees, are asserted in Binkley's proposed amended complaint.

Considering the complaint and proposed amended complaint together, plaintiff alleges that more than one hundred fifty transactions in the thirty-one month period of February, 1979 to September, 1981, which resulted in a reduction of his account from $155,258.00 to $14,591.87, establishes that defendants engaged in excessive trading in his account. He also alleges that he and defendants had an agreement which they violated, that he relied upon defendants who controlled his account, that contrary to their understanding, defendants treated his account as discretionary and that they used it to create excessive profits and commissions for themselves to plaintiff's detriment.

Defendants argue that each count of the complaint and proposed amended complaint should be dismissed. The arguments advanced by defendants will be considered seriatim.

First, defendants contend that an implied cause of action under the Securities Act of 1933, § 17(a) does not exist. Nor, they argue, does a private right of action exist pursuant to the National Association of Securities Dealers' Rules of Fair Practice (NASDRFP). They note that the Third Circuit has not addressed these issues, but that the recent trend in the United States Supreme Court and in the Eastern District of Pennsylvania has been against implying a direct cause of action. In this defendants are correct, and this Court is persuaded by Judge Giles' carefully reasoned conclusion in *Kimmel v. Peterson*, 565 F.Supp. 476

(E.D.Pa.1983) that the Congress did not intend to render superfluous §§ 11 and 12 of the Securities Act of 1933 by permitting investors to seek a remedy in the courts under § 17(a). Moreover, *Kimmel* appears to signal a new trend in the district courts of the Third Circuit toward limiting implied private rights of action under § 17(a). *See,* e.g., *Warner Communications v. Murdoch,* 581 F.Supp. 1482 (D.Del.1984); *In Re Catanella and E.F. Hutton and Co.,* 583 F.Supp. 1388 (E.D.Pa.1984), and *Hill v. Equitable Trust Co.,* 562 F.Supp. 1324 (D.Del. 1983). Similarly, although the Third Circuit has not addressed either the § 17(a) question or the existence of a private cause of action under the National Association of Securities Dealers' Rules of Fair Practice, (plaintiff's fourth count in both the complaint and proposed amended complaint), the trend there likewise seems to be against implying a private right of action. While in *Walck v. American Stock Exchange, Inc.,* 687 F.2d 778 (3d Cir.1982), *cert. denied,* 461 U.S: 942, 103 S.Ct. 2118, 77 L.Ed.2d 1300 (1983), the court was not construing the NASDRFP, its conclusion that "... the Exchanges and not Congress promulgated the rules; and we perceive no basis for an inference that the Exchanges in their quasi-legislative capacity intended to subject themselves to damages for nonenforcement", *id.* at 788, is equally, if not more, applicable in this context. Congress encouraged securities dealers to police their own ranks by requiring any association seeking national registration to promulgate rules designed to prevent manipulative acts and practices. *See,* 15 U.S.C. § 78*o*–3(b)(6). It is unlikely that dealers' associations intended to subject their members to federal liability by aggrieved investors as they attempted to fulfill statutory requirements for registration.

Of course, the intent of such associations is not controlling. Congressional intent is the touchstone for determining whether or not a private right of action should be implied. *See, Kimmel, supra,* and cases cited therein. In *Colonial Realty Corporation v. Bache & Co.,* 358 F.2d 178 (2nd Cir.1966), the court noted that there was some indication in the legislative scheme that Congress did not intend violations of rules adopted by dealers' associations pursuant to the Securities Exchange Act to give rise to civil claims. Nevertheless, the court there did imply a private right of action. At that time, however, which was prior to the Supreme Court's decision in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), it was commonplace to imply a private right of action unless there was an explicit proscription against it. Since *Cort,* the emphasis has shifted to denying a private right of action unless it is clearly supported by legislative intent. Moreover, even the *Colonial Realty* court recognized that a stronger case for a private cause of action is presented where the rule in question imposes a duty unknown to the common law. Here there are both common law and other statutory claims based upon the same conduct alleged to support a cause of action under the NASDRFP. Under these circumstances, this Court is reluctant to permit an implied cause of action.

Consequently, in light of the foregoing discussion, Counts I and IV of plaintiff's complaint will be dismissed.

■■■ Defendants next argue that plaintiff's allegations of violations of § 10(b) of the Securities Exchange Act do not meet the standards of Fed.R.Civ.P. 9(b) in that his allegations of fraud are not stated with sufficient particularity. Initially, we note that some of defendants' objections will be overcome if plaintiff is permitted to file his proposed amended complaint, which includes as exhibits a list of all transactions in his account with Merrill Lynch from January, 1979, to September, 1981, the period during which he complains of churning. In addition, we are bound to follow the Third Circuit's admonition to apply Rule 9(b) in light "of the general simplicity and flexibility contemplated by the rules", *Seville Industrial Machinery Corp. v. Southmost Machinery Corp., et al.,* 742 F.2d 786, 791 (3d Cir.1984). Plaintiff's complaint is sufficient to apprise defendants of his claim that they disregarded his

understanding of how his account would be handled, manipulated him and reduced his account considerably over the period in question. Plaintiff is not required to prove his case in the complaint.

Since the SEC Act claim under § 10(b) and Rule 10(b)(5) will not be dismissed, the Court will retain jurisdiction of plaintiff's pendent state claims. Because only one of those claims, for breach of contract, is arguably subject to arbitration, we will not stay the entire action until that claim is arbitrated. The parties are free to pursue arbitration on that claim if they so choose, or, upon appropriate motion at a more appropriate time, either party may request that that claim be severed or stayed pending the outcome of the federal and other state claims.

Although defendants may be correct that the claim for punitive damages is not properly stated as a separate count, plaintiff can easily cure that procedural defect in an amended complaint consistent with his brief in opposition to defendants' motion to dismiss the complaint. Defendants do not contend that punitive damages are not available as a remedy if plaintiff proves his case as to fraud, merely that the claim was improperly pled.

Next, defendants argue that the complaint should be stricken for pleading scandalous and impertinent material, based partially upon plaintiff's allegation that his disability, cerebral palsy, caused him to be unusually dependent upon defendants and thus contributed to the injury he allegedly suffered at their hands. We find no merit to this contention.

Finally, defendants argue that plaintiff should not be permitted to amend the complaint to add claims under the RICO statute because they have not been convicted of a predicate criminal offense and because there is no allegation of injury stemming from a violation of § 1962(c). This Court can find no basis for the latter argument. In proposed Counts VII and VIII, plaintiff alleges that the conduct outlined in the complaint constitutes a pattern of racketeering activity under § 1962(c) and that it injured him in his property. He also alleges mail fraud as a predicate offense. Both Counts VII and VIII are entitled "18 U.S.C. § 1964(c)", but it is clear that plaintiff is also making allegations under § 1962(c).

Plaintiff in his reply to defendants' memorandum in opposition to the motion to amend suggests that defendants' argument as to racketeering activity is a contention that such activity must be related to the infiltration of legitimate businesses by organized crime. *See, Sedima, S.P.R.L. v. Imrex Co., Inc.,* 741 F.2d 482 (2nd Cir. 1984). Although this issue has not been addressed directly by the Third Circuit, that court in *Seville v. Southmost, supra,* reversed the district court's dismissal of the RICO count because the lower court "confused what must be pled with what must be proved", *Seville* at 790. The quoted language referred to the "enterprise" component of the claim not racketeering activity, but is applicable to the latter as well. Under notice pleading standards plaintiff's allegations are sufficient to survive a motion to dismiss the RICO counts. Whether or not he can sustain his burden of proof that the alleged actions were in fact such racketeering activity as contemplated by the statute is a question left for later determination.

The necessity for a conviction on a predicate offense also remains an open issue in this Circuit. Some recent cases in this district have held that a civil RICO action may not be maintained absent a criminal prosecution. *Viola v. Bensalem Township, et al.,* 601 F.Supp. 1086 (E.D.Pa. 1984); *Bernstein, et al. v. Bank Leumi Le-Israel B.M.,* 598 F.Supp. 922 (E.D.Pa. 1984). Again, however, in *Seville* the court allowed a civil RICO action to proceed with no discussion as to the necessity for a criminal conviction or prosecution. Absent a clear directive from the Third Circuit that a criminal conviction or prosecution is required we presently decline to impose such a requirement.

In summary, then, we will allow plaintiff to amend the complaint in a manner consistent with this memorandum. We will,

however, dismiss Counts I and IV of the original complaint. In all other respects we will deny defendants' motion to dismiss or for a more definite statement.