Carmine BALZANO, Plaintiff,

v.

TOWNSHIP OF NORTH BERGEN,
North Bergen City Council, Mayor
of North Bergen, Defendants.

Civ. A. No. 86–1284.

United States District Court,
D. New Jersey.

Dec. 23, 1986.

Schneider, Cohen, Solomon, Leder & Montalbano by Sheldon Lee Cohen, Jersey City, N.J., for plaintiff.

Hellring, Lindeman, Goldstein, Siegal & Greenberg by Richard D. Shapiro, Newark, N.J., for defendants.

## OPINION

DEBEVOISE, District Judge.

Plaintiff Carmine Balzano filed this action on April 3, 1986 against defendants Township of North Bergen, North Bergen City Council and Mayor of North Bergen (collectively, "the Township") pursuant to 42 U.S.C. § 1983 and the due process clause of the Fourteenth Amendment, seeking to recover monetary compensation for unused sick leave, vacation time and overtime pay allegedly owed to him. Defendants now move to dismiss the complaint for failure to state a claim, and plaintiff has cross-moved for summary judgment.

*Facts*

Plaintiff Carmine Balzano was employed as a police officer by the defendant Township for approximately 18 years before his dismissal on July 12, 1984 because of an arson conviction. He alleges that during his employment he accrued sick pay, vacation pay and overtime pay, and that it was the established custom and practice of the Township to pay such accumulated sums subsequent to an employee's termination.

Plaintiff claims that he accumulated 206 sick days between 1966 and 1984 and that under a Township sick leave ordinance he was entitled to a maximum of $12,000 in compensation. He further claims that he accumulated vacation pay between 1971 and 1984 in the amount of $40,000 and overtime pay between 1971 and 1979 totaling $48,000. He alleges entitlement to these sums based upon the Collective Bargaining Agreement between the Township and the North Bergen Policemen's Benevolent Association ("PBA") and upon Township custom and practice.

Recital of certain of the facts is necessary in order to address properly the issues raised by the parties. It is unclear when Balzano first requested reimbursement for overtime, sick leave pay and vacation pay, but the record indicates that on May 9, 1975 the Director of Public Safety for the Township verified and approved all overtime pay sought by Balzano for the years 1971 through 1975.

On March 23, 1979, Balzano sent a letter to the Commissioner of Public Safety seeking compensation for leave days, vacation days, schedule days and overtime hours for the years 1976 through 1979. The Commissioner countersigned that letter "authorized and approved" and signed his name as well.

On August 23, 1984, Balzano's accountant sent a letter to the Township Administrator regarding the calculation of the amounts claimed by Balzano.

On August 27, 1984, Lieutenant Edward Delaney, who apparently was in charge of

reviewing a terminated police officer's request for back pay, approved $12,000 in sick leave pay and $16,000 vacation pay. Balzano, as noted above, had been dismissed from his job in July of 1984.

On August 30, 1984, Township Administrator Michael Pollotta wrote to Balzano concerning certain inaccuracies in the computation of his vacation time. Pollotta stated in his letter:

> I have asked Lt. Delaney to make the necessary corrections and upon receipt of them I will again contact you. I am aware of the contract provision that requires the Township to pay all money due a discharged employee on the pay day immediately following termination of employment.

Approximately one month later on October 9, 1984, Pollotta sent a letter to Balzano's attorney regarding requests for accrued sick pay, vacation pay and overtime pay. That letter stated in part:

> Since the 1984 Local Municipal Budget has already been adopted it is impossible to pay these claims at this time. I will recommend that they be included in the 1985 budget when it is formulated.

Balzano claims that in reliance on these letters, he refrained from commencing suit, expecting that his claims would be paid in 1985 as stated by Pollotta on October 9, 1984.

Thereafter, on October 29, 1984, the Township's attorney, Dennis Oury, Esq., sent Balzano's attorney a letter stating:

> I have reviewed [Balzano's claim for $100,000] with several Township officials and since the Township is unable at this time to verify your claim, it is the Township's position to decline the application.

Balzano asserts that in light of the previous letters and particularly Pollotta's letter of October 9, he interpreted Oury's letter to mean simply that the claim would not be paid until 1985. Balzano further alleges that the actual reason the Township attorney could not verify the claim, as the attorney later explained, was because at the time he had absolutely no information regarding Balzano's claim to back pay.

The attorney further stated in his letter of December 10 that it was his understanding that the North Bergen Police Department had at least partially substantiated the accumulated pay due Balzano. Finally, Oury also stated that it was the usual and customary procedure to have someone in the Police Department review a terminated police officer's claim and "advise in writing the Commissioners how much sick time, vacation time, etc., was due to the officer. At the time that I wrote [Balzano's attorney], I did not have that information in my possession."

It was not until January 16, 1986 that the Township's attorney, Mark Ruderman, Esq., told plaintiff that "[i]t is my client's position that no monies are due and owing to Mr. Balzano."

Plaintiff has submitted an affidavit stating that "[i]mmediately prior" to commencing suit in this court on April 3, 1986, he requested the PBA President, Timothy Kelly, to file a grievance on Balzano's behalf to recover the back pay due him. Balzano further asserts in his affidavit that Kelly told him that there were no grounds for such a grievance and that therefore no grievance would be instituted.

Thereafter, Balzano filed this action on April 3, 1986. He alleges in his complaint that the defendants "misused their official power and authority to deprive Plaintiff of his property without due process of law," that they "were aware of a sick leave ordinance which they had established" and of the collective bargaining agreement "which explicitly provided for calculation of sick pay, overtime pay and vacation pay," and that they "intentionally and maliciously and with a willful and wanton disregard for [plaintiff's rights] refused to pay Plaintiff monies due and owing him."

The Township now moves to dismiss the complaint for failure to state a claim (1) under 42 U.S.C. § 1983, relying on the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and (2) because the

statute of limitations has run on all of plaintiff's claims arising prior to April 3, 1984. The plaintiff has cross-moved for summary judgment in his favor.

### Discussion
#### Statute of Limitations

In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 524 (1985), the Supreme Court held that for statute of limitations purposes, all Section 1983 claims are to be characterized as personal injury actions regardless of the facts contained in the underlying cause of action. Accordingly, in every Section 1983 suit the courts will look to the law of the forum state to determine the statute of limitations for personal injury actions. In New Jersey, N.J.S.A. 2A:14–2 sets a two year period for personal injury actions.

■ In determining when a cause of action *accrues* under § 1983, however, I must look to federal rather than state law. *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir.1975); *Lavelli v. Listi*, 611 F.2d 1129, 1130 (5th Cir.1980); *Kline v. North Texas State University*, 782 F.2d 1229, 1232 (5th Cir.1986). Plaintiff alleges that during the period from 1971 through 1984 he accumulated $40,000 of vacation pay, and from 1971 to 1979 he accumulated $48,000 of overtime pay and $12,000 in sick leave pay. Defendants maintain that since plaintiff filed his complaint on April 3, 1986 all of his claims arising prior to April 3, 1984 are barred by the applicable statute of limitations except his claim for sick leave pay, which defendants concede would not be time-barred. (The Township ordinance states that accu-mulated sick leave shall not be paid until after the termination of employment.)

It must be determined when Balzano's claims to vacation pay and overtime pay accrued. The Township contends that plaintiff's claims accrued at the time they fell due and that they fell due on the next regular payday (which was prior to April 3, 1984). In support thereof, they cite to several cases which hold that claims for overtime compensation accrue at each regular payday immediately following the work week during which services were rendered, *citing Angulo v. Levy Co.*, 568 F.Supp. 1209, 1215 (N.D.Ill.1983), *aff'd*, 757 F.2d 806 (7th Cir.1985); *Gruca v. United States Steel Corp.*, 360 F.Supp. 38, 48 (E.D.Pa. 1973), *rev'd on other grounds*, 495 F.2d 1252 (3d Cir.1974); *Reid v. Solar Corp.*, 69 F.Supp. 626 (N.D.Iowa 1946); and *Barrett v. National Malleable and Steel Castings Co.*, 68 F.Supp. 410 (W.D.Pa.1946).

Three of the four cases which the Township cites were brought under the Fair Labor Standards Act ("FLSA"), not under 42 U.S.C. § 1983. This fact is significant because those cases specifically state that *under the FLSA*, a cause of action accrues at the next regular payday. *See, e.g., Angulo*, 568 F.Supp. at 1215. There is nothing to suggest that this is the general rule in cases not involving the FLSA. (The fourth case cited by the Township, which arose under the Military Selective Service Act, simply held that where a debt is payable in installments, the statute of limitations begins to run as to each installment when it falls due. *See Gruca*, 360 F.Supp. at 48.)[1]

---

1. If anything, it appears that the principle underlying this accrual rule under the FLSA is to protect the plaintiff rather than to bar him from the courts. For example, in *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041 (5th Cir.1973), *cert. denied*, 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1974), an action was brought against an employer for discriminatory wage practices and continued withholding of wages. The action arose under the FLSA and specifically, under the Equal Pay Act, which was an amendment to the FLSA. There, the court noted that discriminatory wage and overtime payments constitute a continuing violation of the Equal Pay Act. It further noted the well-settled rule under the Act that "[a] separate cause of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed." *Id.* at 1050, *quoting Shandelman v. Schuman*, 92 F.Supp. 334, 335 (E.D.Pa.1950). The court continued, "To hold otherwise would permit perpetual wage discrimination by an employer whose violation of the Equal Pay Act had already lasted without attack for over two years." *Id.*

■ Under the facts of the case at bar, I find more persuasive the cases cited by plaintiff which hold that a cause of action accrues when a plaintiff knows or has reason to know of the injury giving rise to the § 1983 action. *Cox v. Stanton*, 529 F.2d at 50; *Kline v. North Texas*, 782 F.2d at 1233. It would be highly inequitable to preclude plaintiff from suing to recover the back pay allegedly owed him because of the Township's continued failure to settle the matter. As plaintiff notes, he was not informed of the Township's refusal to pay him until January 16, 1986. Moreover, he had delayed instituting suit based on the repeated assurances and representations received from various Township officials. Plaintiff could have quite reasonably believed that the Township's letter of October 29, 1984 was not a denial of his claim but only a postponement of the matter until 1985.

■ I conclude, therefore, that the instant cause of action did not accrue until the date plaintiff became aware of the Township's refusal to pay him on January 16, 1986. He is thus well within the two year statute of limitations, having filed suit on April 3, 1986.[2] Further, if it were held that the statute of limitations had run there would at least be a factual question whether the Township's conduct estops it from asserting the statute.

*Plaintiff's Due Process Claim Under § 1983*

■ This is another in a lengthening series of § 1983 cases in which a defendant seeks dismissal in reliance upon *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). A review of the most recent cases suggests that very little remains of the original *Parratt* holdings; what little of *Parratt* does remain is encapsulated in *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); the present case does not present a situation in which *Hudson v. Palmer* requires dismis-

sal; but, nevertheless, for other reasons this case must be dismissed for failure to state or establish a violation of a Fourteenth Amendment due process right.

One cannot rely on *Parratt* in isolation. It is necessary to read it in the light of preceding and subsequent Supreme Court cases. Although *Parratt* asserted that its goal was to end confusion in § 1983 cases and provide clear guidance to district court judges, it has had exactly the opposite result. It is, as noted by one commentator, "among the most puzzling Supreme Court decisions of the last decade, and the lower federal courts have been thrown into considerable confusion in their efforts to implement it", Monaghan, State Law Wrongs, State Law Remedies, and the Fourteenth Amendment, 86 *Col.L.Rev.* 979 (1986); *see* this court's attempt to decipher *Parratt* in *Holman v. Hilton*, 542 F.Supp. 913 (D.N.J. 1982), *aff'd*, 712 F.2d 854 (3d Cir.1983).

Two essential elements must be established in order to assert a § 1983 claim. First, the conduct complained of must have been committed by a person or persons acting under color of state law. There is no dispute in the present case that the Township was acting under color of state law. Second, the conduct must have deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.

It is the Township's contention that *Parratt* holds that even if a defendant acting under color of state law deprived a plaintiff of property rights, the plaintiff cannot sue under § 1983 in a federal court if (i) the deprivation was the result of an unauthorized failure of a state agent to follow established state procedure and (ii) the state has provided the plaintiff with a means to obtain redress for the deprivation. In the present case, the Township asserts, plaintiff has no § 1983 claim for which relief can be granted in this court because (i) the action of the Township attorney in denying payment was unautho-

---

**2.** I do not address plaintiff's claim that the Township failed to affirmatively plead the statute of limitations in its answer since the Town-

ship was given leave to file an amended answer to include this defense, which it did on June 20, 1986.

rized and (ii) the state did provide a procedure whereby plaintiff could obtain redress, namely, the grievance and arbitration procedure available under the collective bargaining agreement.

In *Parratt*, as has been recited many times, a prison inmate sued prison officials charging that their negligent actions causing the loss of his $23.50 hobby kit deprived him of property without due process of law. The Supreme Court held (i) the negligent loss or destruction of the hobby kit by state officials constituted a deprivation thereof for the purposes of the due process clause of the Fourteenth Amendment, but (ii) the deprivation was not without due process of law because there was an adequate state remedy to redress the wrong.

Some feared that *Parratt*'s first holding would open the doors of the federal courts to a flood of state law tort actions against state and local officials. Others feared that whenever the state provided a remedy *Parratt*'s second holding would close the doors of the federal courts to § 1983 claims, regardless of the importance of the federal rights at issue.

*Parratt* has had neither of these effects. Its murkiness has required the Supreme Court to address once again the dual problem of stemming the flood of trivial § 1983 cases brought in the federal courts while at the same time preserving the role of the federal courts as the guardian of important federal rights.

The Supreme Court overruled *Parratt*'s holding that a state official's mere lack of due care may deprive an individual of due process. *Daniels v. Williams*, — U.S. ——, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, — U.S. ——, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). This eased the fears that the federal courts would become a forum to resolve all kinds of tort claims against state and local officials.

■ As for *Parratt*'s adequate state remedy holding, Professor Monaghan urges that the case "is not tenable, and it should be either overruled or recast", *Monaghan, supra,* at 994. An examination of pre-*Parratt* and post-*Parratt* decisions suggests that this is what the Supreme Court is in the process of doing. It would appear that an available state remedy will bar a federal court action for a constitutional deprivation only in limited circumstances. Those circumstances arise when the deprivation is a property loss caused by unauthorized, intentional misconduct of a low-level official. *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). However, if a fundamental constitutional right is concerned a plaintiff still has immediate access to federal courts whether or not the offending conduct is in violation of state law and whether or not there is an adequate state law remedy. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), is still law.

■ The viable remnant of *Parratt* is set forth in *Hudson, supra.* That is, a plaintiff cannot bring a federal action for an intentional deprivation of property when the deprivation is caused by the unauthorized act of a low-level official. Even if *Hudson* were applicable here, the Township could not rely on this rule because the actions of the Township attorney were neither unauthorized nor were they the actions of a low-level municipal official. He obviously implemented his client's decision to reject plaintiff's claim for payment. He was implementing a policy decision.

■ I have concluded, however, that *Parratt* and *Hudson* are inapplicable to this case. Unlike the situation in those cases where the property at issue was irretrievably lost and where there had already been a deprivation, here plaintiff still has a claim to payment which was only recently rejected by municipal officials. There has not yet been a deprivation. It is true that the Township refused to pay him. However, if the state provides plaintiff with a means to assert his claim and recover if he is entitled to payment, he is not being deprived of any federal right. I know of no case holding that a person having a contractual or statutory claim against a state

or local body has the option to enforce his claim in either a state or a federal court. If, by chance, the state, having created such a right, simply refused to honor its obligations and provided no means to enforce the right, then the claimant might well have been deprived of due process of law under the Fourteenth Amendment. In such a situation § 1983 would permit suit in the federal courts. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 625 (1982).

Thus while the need to decide if there is an available state remedy brings *Parratt* and *Hudson* to mind, the question arises in a different context.

Two recent Third Circuit cases support this distinction between the *Parratt-Hudson* situation and the present case. They considered both the *Parratt-Hudson* situation where a claimant had actually been deprived of a property right (final termination of employment) and the situation we face here (a claim for payment allegedly erroneously rejected by a state official). Therefore the language and reasoning of both *Parratt-Hudson* and of *Logan v. Zimmerman Brush* had to be applied.

*Cohen v. City of Philadelphia*, 736 F.2d 81 (3d Cir.), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), concerned a police officer who had been dismissed for suspected participation in a burglary. After being acquitted, he was reinstated but without back pay. Cohen asserted that his right to due process had been violated both for failure to afford him a pre-termination hearing and for failure to honor his claim for back pay.

The Court used *Parratt-Hudson* language when disposing of both aspects of Cohen's claim. It attempted to determine whether the deprivation resulted from a "random and unauthorized act by a state employee" or as the result of "some established state procedure". It stated:

> If we conclude that Cohen's deprivation resulted from the "Commission's error" rather than from "the state system itself," *Logan*, 455 U.S. at 436, 102 S.Ct. at 1158, we must then consider whether

the means of redress provided by the state satisfy the requirements of the Due Process Clause. In such a case, Cohen will have established a section 1983 claim only if the remedies provided by the state do not comport with the requirements of due process.

*Id.* at 84. The Court concluded that the deprivation was the result of Commission error rather than some established state procedure, because the Philadelphia Home Rule Charter required the Commission to award back pay to a wrongfully discharged employee.

The Court held that "substantive mistakes by administrative bodies in applying local ordinances do not create a federal claim so long as correction is available by the state's judiciary." *Id.* at 86. Moreover, the state, "by providing 'reasonable remedies to rectify a legal error by a local administrative body,'" had provided Cohen with due process. *Id.*, *quoting Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 832 n. 9 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982).

*Cohen* was subsequently superseded by the Supreme Court's decision in *Cleveland Board of Education v. Loudermill* and its companion case, *Parma Board of Education v. Donnelly*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Donnelly, like Cohen, had been reinstated without back pay and, like Cohen, had chosen to file suit in federal court rather than appeal his adverse administrative decision through the state courts. The issue before the Supreme Court was whether Donnelly was entitled to a pre-deprivation hearing before being terminated from his job. The Court held that he was so entitled, and, therefore, Donnelly's failure to pursue state judicial remedies did not defeat his § 1983 claim. This, of course, is an issue which is not present in the instant case. Plaintiff does not contest his dismissal. Therefore, the question of pre-deprivation hearing does not arise. Plaintiff simply seeks the payment of money claimed to be due.

In *Stana v. School District of City of Pittsburgh*, 775 F.2d 122, 130 (3d Cir.1985), the Third Circuit noted that to the extent that *Cohen* suggests that due process does *not* require a hearing before termination of employment, that decision is superseded by *Donnelly.* However, as for *Cohen*'s holding that an administrative body's substantive mistakes in applying a local ordinance providing a right to certain payments do not create a federal claim as long as state remedies are available, that holding still stands. *See id.* at n. 8. That is the situation in the present case where plaintiff seeks payments provided for by ordinance or the collective bargaining agreement and asserts an erroneous denial of these payments by local officials.

Notwithstanding the "random and unauthorized act" language in *Stana*, its underlying reasoning compels the conclusion that the fact that responsible local authorities denied plaintiff's claim does not give him a federal cause of action unless there are no procedures under state law by which he can adequately present his claim. As noted above, this conclusion is not mandated by *Parratt-Hudson*, where the plaintiffs were required to pursue federally protected property rights in state courts (a form of abstention). Rather, as long as the state provides plaintiff with an adequate means to pursue his claim no federal right arises in the first place. Thus if a state forum exists in which plaintiff can pursue his claim, he has not asserted a federal claim and this action must be dismissed.

I conclude that plaintiff has the right to pursue his claim to back pay in the New Jersey state courts. Under New Jersey law a municipality can be sued under circumstances which seem to prevail here if there exists a valid cause of action. *See* N.J.S.A. 59:2–1, *et seq.;* 59:3–1, *et seq.* I see no reason why plaintiff would not be entitled to sue the municipality for the back wages he seeks. Thus dismissal of the present action is required.

The order of dismissal will provide that if the state courts hold that plaintiff does not have the right under state law to pursue his claims there he can then move to re-open this case, since in that event he might well have a federal claim and a remedy under 42 U.S.C. § 1983.

*Conclusion*

I conclude that if plaintiff had a federal cause of action it would not be barred by the statute of limitations. However, plaintiff has adequate means to pursue his claim for money due and owing in the state courts. Under such circumstances he has no federal claim and defendants' motion to dismiss the complaint will be granted. Plaintiff's motion for summary judgment will be denied.

The court will enter its own order.