Alexander ARTWAY, Plaintiff,

v.

Sally SCHEIDEMANTEL, Defendant.

Civ. A. No. 87–2131.

United States District Court, D. New Jersey.

Oct. 28, 1987.

Alexander A. Artway, pro se.

Steven P. Tasy, Deputy Atty. Gen., State of N.J., Richard J. Hughes Justice Complex, Trenton, N.J., for defendant.

COWEN, District Judge.

BACKGROUND

On September 30, 1986, Alexander Artway, an inmate in the New Jersey state prison system, was transferred to the Adult Diagnostic and Treatment Center ("ADTC"), a New Jersey facility for the treatement of convicted sex offenders. On October 2, Artway destroyed a sink located in his cell. A toilet located in the cell was also destroyed at about the same time, although it has never been established that Artway was responsible for the destruction of the toilet.

Prison officials investigated the October 2 incident, and Artway was afforded a disciplinary hearing on October 6, 1986, for which he was offered the assistance of counsel substitute. As a result of the hearing, Artway was found guilty of violatıng D.O.C. Standard # 251.4.152—"Destroying, altering, or damaging government property, or the property of another person." He was ordered to make restitution for the damage to the cell.

Although Artway failed to pursue an administrative appeal of this finding, the New Jersey Superior Court, Appellate Division reviewed the legitimacy of this finding in connection with an appeal by Artway which

challenged the Correction Commissioner's decision to transfer Artway to ADTC. The Appellate Division ruled on March 27, 1987 that Artway had been afforded due process with regard to this infraction, and that the finding of guilt and the sanction imposed was equitable and justified.[1] *Artway v. Com'r, N.J. Dept. of Corr.*, 216 N.J.Super. 213, 218, 523 A.2d 275 (App.Div.1987).

Artway was transferred to Leesburg State Prison in November of 1986, and due to administrative oversight, no action was taken by prison officials to actually impose the restitution penalty until April 8, 1987. On that date, the prison's Classification Committee met and administratively confirmed the sanction. Senior Classification Officer Zorsky then wrote to Artway and advised him of the confirmation. Defendant's Brief, Appendix at 52–53.

After receiving the decision of the Classification Committee, defendant Scheidemantel forwarded the appropriate paperwork to ADTC Business Manager Richard Lettiere, and directed that Lettiere compute the amount of restitution owed by Artway. Finally, on May 13, 1987, in response to a query from Artway, Scheidemantel advised Artway that restitution in the amount of $734.00 would be deducted from his prison account. Defendant's Brief, Appendix at 58.

Artway, by letter dated May 18, 1987, objected to the amount of restitution, and Scheidemantel responded by memorandum, with a breakdown of costs, dated May 22, 1987. Defendant's Brief, Appendix at 61–62. The memorandum broke down the $734.00 restitution figure as follows:

| | |
|---|---|
| Water Closet | $275.00 |
| Lavatory | 209.00 |
| Labor | 250.00 |
| | $734.00 |

No immediate action was taken by prison officials to deduct the restitution from Artway's prison account.

Artway filed a complaint in this action on June 5, 1987. He alleged that the amount

of restitution imposed on him, and the manner in which the decision as to this amount was determined violated various of his constitutional rights. He names as defendant Sally Scheidemantel, Superintendent of the Adult Diagnostic and Treatment Center.

In July of 1987, defendant Scheidemantel reviewed Artway's file and determined that he had not been found guilty of damaging the toilet in his cell, and that the $734.00 restitution figure was too high. On July 20, 1987, Scheidemantel advised Artway of this error, and notified him that his account would now be charged $334.00, not $734.00. Scheidemantel's revised breakdown was:

| | |
|---|---|
| Lavatory | $209.00 |
| Labor | 125.00 |
| | $334.00 |

Scheidemantel also directed that the prison officials at Rahway State Prison, where Artway had since been transferred, effectuate the restitution.

Artway claims that the defendant's actions violated his constitutional rights to due process and equal protection, access to the courts, and to a jury trial. He also contends that he was deprived of his right, under the New Jersey Constitution, to a jury trial.

The defendant now moves for summary judgment. The defendant's motion was originally scheduled for September 9, 1987. However, after the Court had an opportunity to review the submissions of the parties, it requested that the parties submit additional briefs and supporting information regarding the plaintiff's claims that his constitutional rights to due process and equal protection had been violated by the actions of the defendant. Having received and considered those additional submissions, the Court now issues this opinion.

DISCUSSION

The sanction of restitution as applied to New Jersey State prison inmates is authorized by N.J.Admin.Code 10A:4–5.1(c)(5), and the manner in which restitution is to be collected is governed by D.O.C.S. Standard

---

**1.** In finding that the sanction imposed was equitable, the Appellate Division was referring to the imposition of the sanction of restitution, not the imposition of a particular amount of restitution.

#944. This regulation states that "[t]he amount of restitution ordered shall equal the cost of replacement or cost of repair (if possible) of the item(s) damaged or destroyed." D.O.C.S. Standard 944.4. Administrative Directive 46R1 (Defendant's Brief, Appendix at 69), applicable to the ADTC, implements Standard 944, and delegates the initial computation of the amount of restitution to the Business Manager. This amount is then approved by the Superintendent.

The defendant, in this case, has demonstrated to the satisfaction of the Court that she followed the procedures mandated by these regulations, or that any deviation from these regulations was inadvertent and did not result in any injury to the plaintiff.[2]

It also appears, although the Court does not now find, that the amount of restitution charged Artway was correctly calculated under the Regulation. The defendant has presented the affidavit of Harold Aragon, Engineer in Charge of Maintenance at ADTC, who states that the replacement cost of the lavatory was approximately $209.00. This figure is substantiated by an invoice attached as part of the appendix to defendant's brief, for the purchase of "Lavatory (prison) American Standard #0421 026" at $209.25 each. Defendant's Brief, Appendix at 66. Aragon's affidavit also states that plumber Leslie Tutics and several inmate workers spent 1¼ days installing the new sink.

As the defendant charged Artway for labor at rate of $100.00 per day, it appears that the prison properly arrived at the amount of $334.00.[3] The Court notes, however, that the defendant has presented no evidence on the issue of how she arrived at the $100.00 per day labor rate, or whether this rate accurately reflects the cost of the labor utilized.

Given these conclusions, the Court must now consider the defendant's motion for summary judgment, in light of Artway's claims that the amount of restitution, and the manner in which it was determined, violated Artway's constitutional rights to due process, equal protection, access to the courts, and a jury trial.

The defendant asserts that she is entitled to summary judgment on a number of grounds. First, she claims that this action is precluded by the principle of res judicata. Second, the defendant asserts that the holding of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which stated that an inmate's claim that he has been tortiously deprived of property does not rise to the level of a constitutional violation where he has an adequate state remedy, bars this case. Finally, the defendant addresses the merits of Artway's claim, and asserts that Artway can not prove facts which would constitute a violation of his constitutional rights. The Court will address each of these arguments in turn.

Because the Court concludes that the defendant is not entitled to summary judgment regarding one of the plaintiff's claims—his claim that his right to constitutional due process was violated—the Court will then consider whether it should enter summary judgment in favor of the plaintiff on this claim.

*Defendant's Assertion That This Lawsuit is Barred by Res Judicata*

■ The first of the defendant's arguments is that this action is barred by the principle of res judicata. In support of this argument, the defendant points to the decision of the New Jersey Superior Court, Appellate Division, in *Artway v. N.J. Dept. of Corr.*, 216 N.J.Super. 213, 523 A.2d 275 (App.Div.1987). In that case, the court ex-

---

**2.** As the plaintiff's prison account was never actually charged for the destroyed toilet, the Court does not and need not evaluate whether the defendant's error in initially attempting to charge plaintiff for this damage, if acted upon, would have risen to the level of a constitutional violation.

**3.** The addition of the cost of the sink, as charged on the invoice submitted by the defendant, $209.25, and the labor charge, 1.25 × $100.00 = $125.00, produces a total cost of $334.25. However, the defendant appears to have given the plaintiff the benefit of the $0.25 disparity between the cost of the sink as charged on the invoice and the cost of the sink as stated in Mr. Aragon's affidavit.

amined Artway's conviction of the disciplinary charges at issue in this case, and found that the conviction and the penalty imposed were "equitable and justified". However, this state court case was decided on March 27, 1987, before the defendant had even initially calculated the amount of restitution to be charged Artway. In noting that the conviction and penalty were "equitable and justified", the Appellate Division therefore ruled that the penalty of restitution was justified, not that the amount of restitution eventually imposed on Artway was justified.

As Artway contests not the penalty of restitution, but the amount, and the determination of the amount of restitution in this lawsuit, the facts and issues presented in this case do not coincide with those in the case of *Artway v. N.J. Dept. of Corr.,* *supra.* Accordingly, the Court finds that this case is not barred by the principle of res judicata.

*Defendant's Assertion that this Lawsuit is Barred Under the Holding of Parratt v. Taylor*

■ The defendant next argues that this suit should be barred under the holding of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). In that case, the Supreme Court was faced with a prisoner's claim that a "random and unauthorized act by a state employee," had resulted in a "tortious loss" of his property. *Id.* at 541, 101 S.Ct. at 1916. The Court held that because Nebraska had a tort claims statute which made available a remedy for persons believing they had suffered a tortious loss at the hands of the state, the plaintiff could not make out a case that he had been denied property without constitutional due process. *Id.* at 543, 101 S.Ct. at 1917.

The *Parratt* Court, however, quoted then Court of Appeals Judge Stevens in *Bonner v. Coughlin,* 517 F.2d 1311 (7th Cir.1975), *modified en banc,* 545 F.2d 565 (1976),

*cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978), who pointed out:

> that there is an important difference between a challenge to an established state procedure as lacking in due process and a property damage claim arising out of the misconduct of state officers. In the former situation the facts satisfy the most literal reading of the Fourteenth Amendment's prohibition against 'State' deprivations of property; in the latter situation, however, even though there is action 'under color of' state law sufficient to bring the amendment into play, the state action is not necessarily complete. *Parratt, supra,* at 542 [101 S.Ct. at 1916] (quoting *Bonner, supra,* at 1319).

The *Parratt* Court also noted that it was significant that the loss at issue in *Parratt* was "not the result of some established state procedure," and that the state could not "predict precisely when the loss will occur". *Parratt, supra,* at 541, 101 S.Ct. at 1916.

■ Given the above language from *Parratt,* it is clear that the Supreme Court did not intend *Parratt* to apply to cases in which an individual challenges the application of a state statute, regulation, or established procedure as depriving him of property without due process, particularly where the state controls the timing of the deprivation. *See Balzabo v. Township of North Bergen,* 649 F.Supp. 807, 812 (D.N.J. 1986) (interpreting *Parratt,* and post-*Parratt* decisions to "bar a federal court action for a constitutional deprivation only in limited circumstances.... [which] arise when the deprivation is a property loss caused by unauthorized, intentional misconduct of a low-level official").

As Artway challenges the application of a state regulation, the Court finds that *Parratt* is inapposite. The Court, therefore, will not grant defendant's motion for summary judgment on this ground.[4]

---

4. The Court also notes that it is unlikely that the statute cited by the defendant, the New Jersey Tort Claims Act, N.J.Stat.Ann. 59:1–1 *et seq.,* would afford Artway an adequate post-deprivation remedy in this case. First, the New Jersey Tort Claims Act may not provide for suits of this type, as this suit does not allege a tort for which a private person might be held liable. See N.J. Stat.Ann. 59:2–2(a).

## The Merits

### Artway's Equal Protection Claim

■ Artway asserts that the amount of restitution imposed on him was larger than the amount imposed on other, similarly situated inmates, and that his constitutional right to equal protection was therefore violated. He contends that he was made to pay a larger amount of restitution either as punishment for past litigation, or in order to chill future litigation. Artway does not offer any evidence to support these allegations other than his own unsubstantiated affirmation that he has spoken to inmates who have been charged less for similar sinks, and that other inmates have told him that they know of persons who were charged less for similar sinks. These statements, of course, are hearsay, and are not of evidentiary quality. Similarly, Artway offers no evidence from which this Court might reasonably infer that the amount of restitution imposed upon Artway was determined with reference to his propensity to litigate. Rather, as noted above, the evidence before the Court supports the defendant's assertion that the amount of restitution equaled the calculated replacement or repair cost of the sink Artway destroyed.

The defendant, in support of her motion for summary judgment, offers the affidavit of Margaret C. Zorsky, Executive Assistant to the Superintendent at ADTC. Ms. Zorsky states that she has reviewed that institution's Inmate Disciplinary Hearing Results and Classification Committee Agenda Results for the time period December 22, 1984 to October 2, 1986. This review, states Zorsky, reveals that during this period, no inmate at that institution was required to make restitution for a damaged sink or toilet, and that the incident involving Artway was the only incident of its kind at ADTC.

The Court rules, on the basis of the evidence before the Court, that no reasonable jury could find that the restitution penalty imposed on Artway violated his constitutional right to equal protection. Accordingly, the Court will grant the defendant's motion for summary judgment and dismiss plaintiff's equal protection claim.

### Artway's Legal Access Claim

Artway also alleges that the defendant's actions have denied him his constitutional right to have access to the Courts. However, *Hudson v. Robinson*, 678 F.2d 462 (3rd Cir.1982) requires an inmate, in order to maintain a legal access claim, to show an actual injury—an instance in which he was actually denied access to the courts. *Id.* at 466. As the plaintiff has failed to even allege such an injury in his pleadings, the Court will grant the defendant summary judgment as to Artway's claim that he has been denied access to the courts.

### Artway's Claim That he has Been Denied his Constitutional Right to a Jury Trial

Artway claims that both the United States and the New Jersey Constitutions guarantee him the right to a jury trial to determine the amount of restitution he owes. The Court finds that neither of the constitutional provisions Artway points to guarantee him a jury trial on this issue. Accordingly, the Court will grant the defendant summary judgment on this claim.

■ Artway's federal constitutional claim is based on the Seventh Amendment right to a jury trial in civil cases. However, that guarantee has not been extended to the states under the Fourteenth Amendment. *E.g. Letendre v. Fugate*, 701 F.2d 1093, 1094 (4th Cir.1983), *cert. denied*, 464 U.S. 837, 104 S.Ct. 125, 78 L.Ed.2d 122 (1983). Consequently, state denial of a

---

Second, the Third Circuit has declared that the section of this statute which governs suits by prisoners, N.J.Stat.Ann. 59:5–3. when applied to prisoners serving life or long terms, does not provide a constitutionally adequate post-deprivation remedy. The statute was held deficient because it does not allow such prisoners to file suit until the expiration of their term. *Holman*

*v. Hilton*, 712 F.2d 854, 860 (3rd Cir.1983), *aff'd sub nom Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986).

Thus, even if *Parratt* were applicable to Artway's claim, the statute defendant points to probably does not afford Artway a post-deprivation remedy which meets the *Parratt* requirements.

jury trial in a state proceeding does not violate the Seventh Amendment.

■ Artway's state constitutional claim is based on Article 1, Paragraph 9 of the New Jersey Constitution (1947), which states that "The right of trial by jury shall remain inviolate...." However, this provision has been interpreted by the New Jersey courts to preserve the right to a jury trial as it existed at the time of the adoption of the New Jersey Constitution of 1776. *E.g. Manetti v. Prudential Property & Cas. Ins. Co.*, 196 N.J.Super. 317, 320, 482 A.2d 520 (App.Div.1984); *Van Dissel v. Jersey Central Power & Light Co.*, 181 N.J.Super. 516, 525, 438 A.2d 563 (App.Div. 1981), *certif. den.*, 89 N.J. 409, 446 A.2d 142 (1982), *vacated on other grounds*, 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 224 (1984). Essentially, the right to a jury is guaranteed as to those common law actions triable as of right by a jury in 1776. However, contemporary proceedings unknown at common law and actions not traditionally tried by a jury are outside the orbit of the constitutional right to a jury trial. *Van Dissel, supra*, at 525, 438 A.2d 563. For example, the *Van Dissel* court found that an owner's action for inverse condemnation based on state and federal constitutional guarantees arises from rights created after 1776. Therefore, such actions are not encompassed under the New Jersey Constitution's guarantee to a jury trial. *Id.* at 525–26, 438 A.2d 563.

Here Artway asserts that he is entitled to jury trial for the purposes of calculating the penalty he has been assessed as a result of a prison disciplinary proceeding. This Court finds that such disciplinary proceedings are not tantamount to a common law cause of action existing in 1776. Artway is therefore not entitled to a jury trial under the New Jersey Constitution for the purpose of calculating the amount of restitution he owes.

### Artway's Due Process Claim

■ Artway claims that he was denied his constitutional right to due process when the defendant determined the amount of restitution to be withdrawn from his prison account without a hearing or jury trial. He argues that this procedure—or lack thereof—violated his right to due process, under the United States Constitution. Defendant does not contest the fact that Artway was not offered a hearing or jury trial on the amount of restitution, but argues that Artway's claim that he is entitled to such a hearing or jury trial is without merit. Defendant argues that because she complied with the constitutional due process requirements outlined in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1975), and *Avant v. Clifford*, 67 N.J. 496, 341 A.2d 629 (1975), which discuss a prisoner's right to due process when accused of a disciplinary violation, Artway can not successfully assert that he has "an inherent right in the United States Constitution to a separate hearing regarding the amount of restitution which he owes." Defendant's Supplemental Brief, at 4.

Defendant then argues that because New Jersey law does not give a prisoner a "justifiable expectation" to the monies in his prison account, it can not be said to have created a property interest protected by the federal constitution. Artway, according to this argument, does not have a state created property right, and therefore has no right to constitutional due process.

The Court finds both of these arguments to be unpersuasive. While the *Wolff* and *Avant* cases describe the constitutional due process requirements regarding prison disciplinary procedures, Artway does not contest that the prison disciplinary procedures afforded him were in any way deficient. The fact that the defendant satisfied the requirements of those cases does not immunize her from claims that she denied Artway constitutional due process regarding a determination not discussed by those opinions. In this suit, Artway asserts that once the state has determined, by an appropriate procedure, that he is liable for a certain unliquidated amount of damages, he is entitled to due process regarding the determination of those damages. The cases cited by the defendant do not hold otherwise.

The defendant also asserts that New Jersey law does not create a justifiable expec-

tation that a prisoner will receive the funds in his prison account. Thus, she asserts, Artway can not have a protected property interest in those funds.

The Court finds this argument to be without merit. The statutes cited by the defendant explicitly contemplate that monies remaining in a prisoner's account will, upon the completion of his term, be paid to the prisoner. N.J.Stat.Ann. 30:4–91.4(f) ("The balance, if any, *shall* be paid to the prisoner at the completion of the period of his confinement.") (emphasis added). Although this statute authorizes prison administrators to withdraw certain monies from a prisoner's account for certain designated purposes,[5] it does not grant administrators discretion to withdraw these monies for purposes not contemplated by the statute. Rather, it creates an expectation that those monies not withdrawn for legitimate, designated purposes will be returned to the inmate. *Id.*

The Court, therefore, will deny defendants' motion for summary judgment regarding Artway's claim that he has been denied his constitutional right to due process.

*Summary Judgment for the Plaintiff*

As noted above, the Court views Artway's claim as asserting that once a person has been properly determined liable for certain unliquidated damages, he is entitled to due process regarding the determination of the amount of those damages. Although Artway was properly adjudicated guilty of a prison disciplinary charge, and appropriately ordered to make restitution for the damage he caused, he was offered no opportunity to be heard regarding the amount of damage deducted from his prison account. The determination of the amount of restitution to be charged involves the determination of facts, and in this case, disputed facts.

Since, as noted *supra*, the Court finds that Artway has a property interest in the funds in his prison account, he has been denied this property without due process of law. As the facts giving rise to this claim are not disputed by the parties, and the Court is persuaded that Artway's claim has merit, the Court will grant Artway summary judgment on this claim, *sua sponte.*[6]

■ As described above, the procedures adopted by the defendant for determining the amount of restitution owed by a prisoner who has been so penalized do not contemplate a hearing or trial, either before or after the restitution amount is charged a prisoner and withdrawn from his prison account. The Court finds these procedures, as expressed in Department of Corrections Standard # 944 and ADTC Administrative Directive 46R1, to be constitutionally defective.

The due process clause of the Fourteenth Amendment requires that "a deprivation of life, liberty or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleve-*

---

**5.** The Court takes note that N.J.Stat.Ann. 30:4–91.4 is entitled "Earnings of inmate", and appears to authorize only the withdrawal of those monies in a prisoner's account which are earned in a prison work program. Neither party to this case has presented evidence regarding the origin of the monies withdrawn from Artway's account.

Additionally, although N.J.Stat.Ann. 30:4–91.4(d) empowers a Superintendent to withdraw monies from a prisoner's account for "[p]ayment of *court-ordered* penalty assessments, restitution and fines," (emphasis added) the statute does not appear to contemplate the withdrawal of monies to pay restitution penalties ordered as a result of prison disciplinary procedures.

Thus, it is not clear that the regulation at issue in this case is consistent with the statute under which it was formulated. As this issue has not been raised in this case, it will not be addressed

further by the Court. The possibility that the regulation may not be appropriate under the statute, however, further diminishes the force of the defendant's argument that the plaintiff had no expectation that monies would not be withdrawn from his prison account, without hearing or trial, as restitution for prison disciplinary infractions.

**6.** This Court clearly has authority to enter summary judgment against the moving party, even if her opponent has not moved. 6 Moore's Fed.Prac., para. 56.12 (2d Ed.1976); *Morrissey v. Curran,* 423 F.2d 393, 399 (2d Cir.), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796 (1970); *Comm'n Etc. v. N.Y. Temporary State Com'n, Etc.,* 534 F.Supp. 489, 501 (N.D.N.Y. 1982); *Moss v. Ward,* 450 F.Supp. 591, 594 (W.D.N.Y.1978).

land Board of Education v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1984) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950)). The Supreme Court describes " 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property.' " *Id.* at 542, 105 S.Ct. at 1493 (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original). The process due in a particular situation is determined according to a balancing of competing interests test. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Loudermill, supra,* at 542–43, 105 S.Ct. at 1493–94. The considerations to be balanced include the private interest at stake; the risk of an erroneous deprivation through the procedures used; the value, if any, of additional procedural safeguards; and the Government's interest, including the cost and burden of additional safeguards. *Mathews, supra,* at 325, 96 S.Ct. at 898. Finally, the Third Circuit has noted that a hearing can be postponed until after a deprivation only if a "case falls within extremely narrow lines reserved for ... limited situations...." *Stana v. School Dist. of City of Pittsburgh,* 775 F.2d 122, 127 (3rd Cir.1985).

Applying the law to the facts in this case, it is clear that Artway has not been afforded constitutionally adequate due process. Indeed, he has been afforded no due process. The regulations governing the imposition of the restitution penalty do not contemplate that a prisoner be afforded any opportunity to contest the amount of restitution he is charged, let alone a pre-deprivation opportunity to be heard.[7]

This Court therefore finds that Artway is entitled to summary judgment in his favor on his claim that the defendant has violated his right to due process under the United States Constitution. While the Court finds that the defendant is liable on this claim, it leaves damages to be determined at trial.

The Court will enter an Order consistent with this opinion.

## ORDER

This matter comes before the court on defendant's motion for summary judgment. The Court, having considered the papers filed in support of the motion, and for the reasons set forth in the opinion dated 27 October, 1987,

ORDERS on this 27th day of October, 1987 that the defendant's motion for summary judgment is granted as to plaintiff's claims that he has been denied his rights under the United States Constitution to equal protection, a jury trial, and access to the courts. The defendant's motion is also granted as to plaintiff's claim that he has been denied his right, under the New Jersey Constitution, to a jury trial. The defendant's motion is denied as to the plaintiff's claim that he has been denied due process under the United States Constitution.

The Court, for the reasons stated in its opinion, also ORDERS that summary judgment on the issue of liability be entered against the defendant on plaintiff's claim that he has been denied due process under the Unites States Constitution.

---

**7.** It appears that Artway should have been afforded an opportunity to be heard before his prison account was charged the restitution calculated by the defendant. The government, in this case, can have little interest in holding a hearing after, rather than prior to, the deduction of a restitution penalty from a prisoner's account. Additionally, a pre-deprivation hearing would appear to impose no more burden upon the government than a post-deprivation hearing. Given these considerations, and the strong presumption that a person be afforded a pre-deprivation hearing, *see Stana, supra,* it is likely that the law requires that a prisoner be afforded a pre-deprivation hearing before a restitution penalty is deducted from a prisoner's account.