**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2496-24

JASPER FRAZIER,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted April 21, 2026 – Decided May 8, 2026

Before Judges Gooden Brown and Rosero.

On appeal from the New Jersey Department of Corrections.

Jasper Frazier, self-represented appellant.

Jennifer Davenport, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Andrew D. Spevack, Deputy Attorney General, on the brief).

PER CURIAM

Jasper Frazier appeals from a final agency decision of the New Jersey Department of Corrections (DOC) that denied his claim for lost property. Because Frazier fails to sustain his burden to establish DOC's decision was arbitrary, capricious, or unreasonable, and there was sufficient evidence in the record to uphold the denial, we affirm.

We glean the facts and procedural history from the record. On January 22, 2024, Frazier was an inmate at East Jersey State Prison (EJSP) where he is currently housed.

Upon his arrival at EJSP, Frazier received the Department Inmate Handbook. The handbook explains DOC "is responsible to collect any statutory or court-imposed obligations or revenue collections from you" in accordance with N.J.S.A. 2C:46-4(a)(1) and N.J.A.C. 10A:2-2.2; the sums of these obligations are derived from the Judgment of Conviction (JOC) and the inmate's trust account summary; "collection of revenues is not limited to your current incarceration" as "[i]f you have a prior conviction in the State of New Jersey, any fines, penalties and restitution payments associated with the earlier conviction will also be collected;" deductions are "automatically deducted from your inmate wages each month" or any other money received; and "[a]pproximately one third of your wages will be taken each month until your

total obligations (both prior and current convictions) are satisfied."  All court ordered restitution (CREST), legal copy loans (COPL), legal mailing loans, commissary loans, pharmacy loans and deductions were noted on Fraizer's inmate trust account summary as required by N.J.A.C. 10A:2-7.5(d).

After reviewing Frazier's records, DOC found assessments and restitutions were still owed per Frazier's MER-92-02-0015-I JOC.  DOC then began deducting approximately one third of his wages to satisfy his obligations. As shown on Frazier's trust account statement from January 1, 2025 to May 1, 2025, Frazier originally owed $39 in Victims of Crime Compensation (VCCB) fees, $3 in Criminal Disciplinary and Revocation Collection (CDRC) fees, $8 in Victims and Witness Advocacy Fund (VWAF) fees, and $1,252 in CREST.

Frazier's May 2025 trust account statement showed Frazier had paid off the VCCB, CDRC, and VWAF charges, but still owed CREST fees.  CREST payments in the amount of $117.12 were drawn from his account between September 12, 2024 to May 15, 2025.  Frazier's CREST payments on September 12 and 16, 2024 were $9.15 and $11.62, respectively.  On October 12, 23, and 26, 2024, his CREST payments were $10.56, $5.28, and $5.00, respectively.  On November 15, 2024, his CREST payment was $11.62 and on December 13, 2024, $9.50.

Frazier's trust account statement shows that his wages from January to March 2025 were $30.40 per month.  In 2025, DOC deducted $11.09 for CREST on January 15, 2025, February 14, 2025, April 15, 2025, and May 15, 2025.  The CREST payment on March 14, 2025 totaled $10.03.  Following these deductions, Frazier had a CREST balance of $1,113.23.  In addition, Frazier's account showed two COPL totaling $1,849.39, three legal mail loans totaling $350.19, a $1.12 commissary loan, and an $18 pharmacy loan.

On March 4, 2025, Frazier filed an "Inmate Claim for Lost, Damaged or Destroyed Personal Property."  Frazier listed three items in the description:  (1) Mer920200i51i worth $500; (2) COPL worth $370.92; and (3) commissary worth $2.79.  In the section titled "Manner in which item(s) was lost destroyed, or damaged," Frazier wrote, "The facility [is] illegal in violation 18 U.S.C. 1341 fraud and swindle taking money saying I owe for a fine out of [M]ercer county I already paid."  In the section of the form titled "give names of persons who will make repairs," Frazier wrote, "reimburse money and apply to what I really owe."  Frazier attached incomplete copies of his monthly trust account to the claim.  He did not attach any document showing he paid his obligations or that the amount DOC stated was due for CREST, COPL, legal mail loans, commissioner loan, or pharmacy loan were incorrect.

4

On March 18, 2025, DOC denied the property claim on the grounds that: (1) an investigation showed no negligence on the part of the EJSP; and (2) Frazier must contact Central Office Revenue Unit (CORU) for questions regarding deductions from his trust account. Frazier appeals the DOC's denial of his property claim to this court.

We recite Frazier's arguments on appeal for the property claim verbatim:[1]

> THE STATE AGENCY ERRED IN DENYING APPELLANT['S] PERSONAL PERMISSIBLE PERSONAL PROPERTY CLAIM. APPELLANT [HAS] BEEN INCARCERATED WITHIN [THE] INDIANA DEPARTMENT OF CORRECTIONS FOR OVER [TEN] YEARS. APPELLANT WAS NEVER INFORM[ED] BY HIS CASE MANAGER OR IND[I]ANAPOLIS CENTRAL OFFICE IN INDIANA, [WHICH] OVERSEES OPERATIONAL I.D.O.C. THAT H[E ]WAS A DEBTOR TO [THE] STATE OF NEW JERSEY TO PAY OFF PROBATION FEES FOR A [THIRTY] YEAR OLD CASE. APPELLANT [HAS] BEEN ON PROBATION AND PAROLE

---

[1] Frazier raises many arguments concerning issues that extend beyond the lost property claim on appeal. We decline to consider these issues. Appellate courts will normally not address issues that were not preserved before an agency. See State v. Robinson, 200 N.J. 1, 20 (2009) (explaining that "[i]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court . . . unless the questions . . . go to the jurisdiction of the trial court or concern matters of great public interest.") (alteration in original) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)); see also ZRB, LLC v. N.J. Dep't of Env't Prot., 403 N.J. Super. 531, 536 n.1 (App. Div. 2008) (applying the principle in Robinson and Nieder to appeals from administrative agency orders).

[AND] WAS NEV[E]R INFORM[ED] BY HIS PROBATION OR PAROLE OFFICER [THAT] HE WAS A DEBTOR TO [THE] STATE OF NEW JERSEY TO PAY OFF FINES A[]ND FEES FOR $1,852.92 (FIRST TIME), []$1,300.00 (SECOND TIME[)] AND []$2,000.00[] (THIRD TIME[)]. THE STATE AGENCY REFUS[ED] TO PROVIDE APPELLANT ANY LEGAL DOCUMENTS FROM MERCER COUNTY CRIMINAL COURT, MERCER COUNTY PROBATION AND MERCER COUNTY PROSECUTOR['S] OFFICE UNDER INDICTMENT NUMBER (MER92020015[]I) OUT OF TRENTON, N[.]J[.]

"There are well-recognized principles governing the judicial review of administrative agency determinations. Appellate courts have 'a limited role' in the review of such decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). We will not reverse a decision of an administrative agency unless it is shown to be "arbitrary, capricious or unreasonable or . . . not supported by substantial credible evidence in the record as a whole." Henry, 81 N.J. at 580.

> In determining whether agency action is arbitrary, capricious, or unreasonable, a reviewing court must examine:
>
> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3)

> whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

At the time Frazier claims his property was lost,[2] the regulations governing lost property claims under N.J.A.C. 10A:2-6.1 provided:

> (a) When an inmate claims the loss . . . of personal property . . . the inmate shall complete and submit the applicable form(s) for Inmate Claim For Lost, Damaged Or Destroyed Personal Property to the Administrator or designee.
>
> (b) The Administrator or designee shall submit the claim form(s) to the Correction Major or designee for investigation and preparation of a report. The investigation conducted by the Correction Major or designee shall consist of, but not be limited to:
>
> > 1. Obtaining statements from the inmate, witnesses and correctional facility staff; and
> >
> > 2. Verifying that the inmate was authorized to have and did in fact, possess the personal property named in the claim.
> >
> > 3. Verification of possession of lost, damaged or destroyed personal property

---

[2] The regulations were amended and effective January 5, 2026. We quote the version of the regulation in effect when Frazier submitted the claim.

may be made by review of applicable documentation such as the IIS-1M Inmate Inventory Sheet maintained by the correctional facility . . . .

(c) Upon completion of the investigation, the applicable form(s) and a copy of the investigative report shall be submitted to the Business Manager, or designee of the correctional facility for review.

(d) The Business Manager or designee shall review the applicable form(s) and the investigative report, and complete the Certification of Inmate Claim form indicating a recommendation to approve or deny the claim with substantiating reasons.

(e) The claim packet shall include all applicable form(s) and the investigative report. The claim packet shall be submitted by the Business Manager or designee to the Administrator for review and recommendation for approval or denial.

(f) Claims that are denied by the Administrator shall not be processed any further. In all cases of denial, the inmate shall be notified of the denial in writing by the Administrator with substantiating reasons.

N.J.A.C. 10A:2-6.2 provided:

(a) The following factors shall be considered before recommending approval or disapproval of claims:

Whether the investigation revealed any neglect by the correctional facility;

Whether care was exercised by facility staff preventing property loss, damage or destruction;

8

> Whether the inmate exercised care in preventing property loss, damage or destruction;
>
> Whether it has been proven that the inmate was authorized to have and did, in fact, possess the item(s) named in the claim;
>
> Whether sufficient information has been supplied by the inmate, including proper receipts, witnesses and investigative reports;
>
> Whether the inmate submitted the claim in a timely manner;
>
> Whether the loss or damage exceeds authorized amounts of correctional facility personal property limits;
>
> Whether the personal property is considered contraband; and
>
> Whether other reviewers recommended denial of the claim and the reasons therefor.

N.J.A.C. 10A:2-7.5 provided:

> Upon receipt of the order from the Administrator, the Business Manager or designee shall, with the monthly posting of each State pay or funds from other sources, remove any amount of funds in excess of the one time monthly amount of $15.00 from the account of the inmate until all inmate debt has been paid in full.
>
> With the monthly posting of each State pay or funds from other sources, any amount of funds in excess of

9

the one time monthly amount of $15.00 shall be removed from the account of an inmate as permitted by Federal and State statutes to pay obligations before correctional facility restitution.

Funds collected for restitution must be deposited and recorded in accordance with the Department of Treasury and the [DOC] policies and procedures.

Each removal of funds from an inmate account shall be noted on the inmate account record. The inmate shall be informed in writing of each removal of funds for restitution in the monthly inmate trust account statement.

In the event an inmate is transferred to another correctional facility within the [DOC], funds shall continue to be removed from the account of the inmate until restitution has been paid in full.

The Business Manager or designee of the receiving correctional facility shall forward all funds collected for restitution to the correctional facility which suffered the loss involved.

In the event an inmate is released with funds due a correctional facility for restitution, the debt shall be handled in accordance with applicable State and Departmental policies and procedures.

Any amount owed by an inmate upon release shall not be deducted from any financial aid the inmate may receive.

We have held that an "inmate has a property right in an inmate trust account;" and inmates are "'entitled to due process as to deductions made from

10

their accounts.'" Mourning v. Corr. Med. Servs., 300 N.J. Super. 213, 233 (1997) (quoting Artway v. Scheidemantel, 671 F. Supp. 330, 336-37 (D.N.J. 1987)). "'The minimum requirements of due process, therefore, are notice and the opportunity to be heard.'" Ibid. (quoting Doe v. Poritz, 142 N.J. 1, 106 (1995)).

Having reviewed the record, we are satisfied that DOC provided Frazier the due process protections to which he was entitled. Upon his arrival at EJSP, DOC provided him with the notice of funds due, its intent to remove funds from his account, and the manner in which those funds would be removed from his account. DOC further adequately noted "each removal of funds for restitution in the monthly inmate trust account statement" as required by N.J.A.C. 10A:2-7.5.

The record is void of any violation by DOC of any "express or implied legislative policies," instead it shows DOC "follow[ed] the law." In re Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. at 482-83). DOC afforded Frazier the due process required under N.J.A.C. 10A:2-6.1. DOC's investigation considered the N.J.A.C. 10A:2-6.2(a) factors relevant to the case, found there was no proof of negligence by the staff (factors one and two), informed Frazier of the correct department to contact for questions regarding

deductions, and recommended denial of the claim (factor nine).  DOC then notified Frazier in writing of its decision with reasons.

Next, "the record contains substantial evidence to support the findings on which the agency based its action."  Ibid. (quoting In re Carter, 191 N.J. at 482-83).  Frazier presented no evidence to support his claim that restitution due in MER-92-02-0015-I was previously paid.  In the absence of evidence beyond mere assertions, and in applying the administrative code to these facts, it is clear DOC reached a reasonable conclusion by denying Frazier's property claim and informing Frazier that he should "contact CORU regarding deductions."

Given our well-established deference to administrative agencies, we are not convinced Frazier has established that DOC's final agency decision was "arbitrary, capricious or unreasonable or . . . not supported by substantial credible evidence in the record as a whole."  Henry, 81 N.J. at 580.

Under these circumstances, there is no basis for us to disturb DOC's decision.

A-2496-24

To the extent we have not addressed any of Frazier's remaining claims, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(D),(E).[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[3] Rule 2:5-1(f)(2)(ii) provides the notice of appeal "shall . . . designate the judgment, decision, action, or rule, or part thereof . . . from . . . which the appeal is taken." Therefore, "only the judgments, orders or parts thereof designated in the notice of appeal are subject to the appellate process and review." Pressler & Verniero, Current N.J. Court Rules, cmt. 5.1 on R. 2:5-1 (2026); see also Campagna v. Am. Cyanamid Co., 337 N.J. Super. 530, 550 (App. Div. 2001) (applying the comment to the relevant court rule to reject appellant's claim as not properly before this court for review). Frazier's notice of appeal only designates the March 18, 2025 disposition concerning his lost property claim addressed by DOC. Therefore, any arguments regarding his federal cases or Open Public Records Act request denials are not appropriate for our review as no orders or decisions from these entities are listed in the notice of appeal.

A-2496-24